**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | |
|---|---|
| TAMMY MONTGOMERY and MARK MCCABE | Civil Action No. |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| MOHAWK INDUSTRIES, INC. | |
| Defendant. | |

## CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

NATURE OF THE CASE ...................................................................................... 1

PARTIES ............................................................................................................... 1

JURISDICTION AND VENUE ............................................................................. 4

FACTUAL BACKGROUND ................................................................................. 4

    I.     PFAS Creation ........................................................................... 10

    II.    The Carpet Industry and Carpet Manufacturing ................................. 11

    III.   The Development of "Stain Resistant" Carpets .................................. 15

    IV.   Indoor Transmission of PFAS Through Textiles ................................. 19

    V.    Defendant's Knowledge of PFAS' Harmful Effects ........................... 21

    VI.   Regulations Against PFAS-Using Companies ..................................... 22

    VII.  The Lasting Effects of PFASs in Carpets and Appropriate Remedies ............. 23

PLAINTIFF SPECIFIC ALLEGATIONS ........................................................... 25

EQUITABLE TOLLING OF THE STATUTES OF LIMITATIONS ................. 26

CLASS ACTION ALLEGATIONS ..................................................................... 27

CAUSES OF ACTION ....................................................................................... 30

    COUNT 1 ALABAMA EXTENDED MANUFACTURERS' LIABILITY DOCTRINE
        (DESIGN DEFECT) ............................................................................. 30

    COUNT 2 ALABAMA EXTENDED MANUFACTURERS' LIABILITY DOCTRINE
        (FAILURE TO WARN) ....................................................................... 33

    COUNT 3 ALASKA STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ............... 34

    COUNT 4 ALASKA STRICT PRODUCTS LIABILITY (FAILURE TO WARN) .......... 37

    COUNT 5 VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES AND
        CONSUMER PROTECTION ACT (ALASKA STAT. ANN. §§ 45.471 *ET SEQ.*) ......... 38

    COUNT 6 ARIZONA STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ............ 41

COUNT 7 ARIZONA STRICT PRODUCTS LIABILITY (FAILURE TO WARN) ........................ 43

COUNT 8 VIOLATION OF THE ARIZONA CONSUMERS FRAUD ACT
    (ARIZ. REV. STAT. §§ 44-1521 ET SEQ.) ................................................................ 45

COUNT 9 ARKANSAS STRICT PRODUCTS LIABILITY (DESIGN DEFECT) .......................... 47

COUNT 10 ARKANSAS STRICT PRODUCTS LIABILITY (FAILURE TO WARN) .................... 49

COUNT 11 VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT
    (ARK. CODE ANN. §§ 4-88-101 ET SEQ.) ............................................................. 51

COUNT 12 CALIFORNIA STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ..................... 53

COUNT 13 CALIFORNIA STRICT PRODUCTS LIABILITY (FAILURE TO WARN) ................ 56

COUNT 14 VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
    (CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.) ...................................................... 57

COUNT 15 COLORADO STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ....................... 59

COUNT 16 COLORADO STRICT PRODUCTS LIABILITY (FAILURE TO WARN) ................... 62

COUNT 17 VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT
    (COLO. REV. STAT. §§ 6-1-101 ET SEQ.) .............................................................. 63

COUNT 18 CONNECTICUT STRICT PRODUCTS LIABILITY (DESIGN DEFECT) .................. 65

COUNT 19 CONNECTICUT STRICT PRODUCTS LIABILITY (FAILURE TO WARN) .............. 68

COUNT 20 DELAWARE NEGLIGENCE (DESIGN DEFECT) .................................................. 70

COUNT 21 DELAWARE NEGLIGENCE (FAILURE TO WARN) ............................................. 72

COUNT 22 VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT
    (DEL. CODE. TIT. 6, §§ 2511 ET SEQ.) ................................................................. 73

COUNT 23 FLORIDA STRICT PRODUCTS LIABILITY (DESIGN DEFECT) .......................... 76

COUNT 24 FLORIDA STRICT PRODUCTS LIABILITY (FAILURE TO WARN) ....................... 78

COUNT 25 VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES
ACT (FLA. STAT. ANN. §§ 501.201 *ET SEQ.*)...........................................................80

COUNT 26 GEORGIA STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ...........................82

COUNT 27 GEORGIA STRICT PRODUCTS LIABILITY (FAILURE TO WARN).......................84

COUNT 28 HAWAII STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ............................86

COUNT 29 HAWAII STRICT PRODUCTS LIABILITY (FAILURE TO WARN).........................88

COUNT 30 VIOLATION OF HAWAII UNIFORM DECEPTIVE TRADE PRACTICE ACT
(HAW. REV. STAT. ANN. §§ 481A-1 *ET SEQ.*) ....................................................90

COUNT 31 IDAHO STRICT PRODUCTS LIABILITY (DESIGN DEFECT)...............................92

COUNT 32 IDAHO STRICT PRODUCTS LIABILITY (FAILURE TO WARN)............................94

COUNT 33 VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT
(IDAHO CODE ANN. §§ 48-601 *ET SEQ.*) ...............................................................96

COUNT 34 ILLINOIS STRICT PRODUCTS LIABILITY (DESIGN DEFECT) .............................98

COUNT 35 ILLINOIS STRICT PRODUCTS LIABILITY (FAILURE TO WARN) ......................100

COUNT 36 VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS
PRACTICES ACT (815 ILL. COMP. STAT. ANN. §§ 505/1 *ET SEQ.*) ......................102

COUNT 37 INDIANA STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ..........................104

COUNT 38 INDIANA STRICT PRODUCTS LIABILITY (FAILURE TO WARN) ......................106

COUNT 39 VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
(IND. CODE ANN. §§ 24-5-05-0.1, *ET SEQ*)...........................................................108

COUNT 40 IOWA STRICT PRODUCTS LIABILITY (DESIGN DEFECT)................................110

COUNT 41 IOWA NEGLIGENCE (FAILURE TO WARN)....................................................112

iv

COUNT 42 VIOLATION OF THE IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT (IOWA CODE ANN. §§ 714H.1 *ET SEQ.*)........................................114

COUNT 43 KANSAS STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ...........................116

COUNT 44 KANSAS STRICT PRODUCTS LIABILITY (FAILURE TO WARN) ......................118

COUNT 45 VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT (KAN. STAT. ANN. §§ 50-623 *ET SEQ.*) ................................................................120

COUNT 46 KENTUCKY STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ......................122

COUNT 47 KENTUCKY STRICT PRODUCTS LIABILITY (FAILURE TO WARN)..................124

COUNT 48 VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT (KY. REV. STAT. ANN. §§ 367.110 *ET SEQ.*)...........................................................126

COUNT 49 LOUISIANA STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ......................128

COUNT 50 LOUISIANA STRICT PRODUCTS LIABILITY (FAILURE TO WARN) .................130

COUNT 51 VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (LA. REV. STAT. ANN. §§ 55:1401 *ET SEQ.*) .....132

COUNT 52 MAINE STRICT PRODUCTS LIABILITY (DESIGN DEFECT) .............................134

COUNT 53 MAINE STRICT PRODUCTS LIABILITY (FAILURE TO WARN) ........................136

COUNT 54 MARYLAND STRICT PRODUCTS LIABILITY (DESIGN DEFECT) .....................138

COUNT 55 MARYLAND STRICT PRODUCTS LIABILITY (FAILURE TO WARN) .................140

COUNT 56 VIOLATION OF MARYLAND CONSUMER PROTECTION ACT (MD. CODE ANN., COM LAW §§ 13-101 *ET SEQ.*) ..............................................142

COUNT 57 MASSACHUSETTS BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (DESIGN DEFECT) ................................................................144

COUNT 58 MASSACHUSETTS BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (FAILURE TO WARN) ........................................................146

v

COUNT 59 VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
(MICH. COMP. LAWS ANN. §§ 445.901 *ET SEQ.*) .................................................148

COUNT 60 MINNESOTA STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ....................150

COUNT 61 MINNESOTA STRICT PRODUCTS LIABILITY (FAILURE TO WARN) ...............152

COUNT 62 VIOLATION OF THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES
ACT (MINN. STAT. ANN. §§ 325D.44 *ET SEQ.*)....................................................154

COUNT 63 MISSISSIPPI STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ......................156

COUNT 64 MISSISSIPPI STRICT PRODUCTS LIABILITY (FAILURE TO WARN)..................158

COUNT 65 MISSOURI STRICT PRODUCTS LIABILITY (DESIGN DEFECT).........................160

COUNT 66 MISSOURI STRICT PRODUCTS LIABILITY (FAILURE TO WARN)....................162

COUNT 67 VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
(MO. REV. STAT. §§ 407.005 *ET SEQ.*) ..................................................................164

COUNT 68 MONTANA STRICT PRODUCTS LIABILITY (DESIGN DEFECT).......................166

COUNT 69 MONTANA STRICT PRODUCTS LIABILITY (FAILURE TO WARN)..................168

COUNT 70 VIOLATION OF THE MONTANA CONSUMER PROTECTION ACT
(MONT. CODE ANN. §§ 30-14-101 *ET SEQ.*) .......................................................170

COUNT 71 NEBRASKA STRICT PRODUCT LIABILITY (DESIGN DEFECT) ........................172

COUNT 72 NEBRASKA NEGLIGENCE (FAILURE TO WARN)...........................................174

COUNT 73 VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT
(NEB. REV. STAT. §§ 59-1601 *ET SEQ.*) ...............................................................176

COUNT 74 NEVADA STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ..........................178

COUNT 75 NEVADA STRICT PRODUCTS LIABILITY (FAILURE TO WARN) .....................180

COUNT 76 VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT
(NEV. REV. STAT. §§ 598.0903 *ET SEQ.*) .............................................................182

COUNT 77 NEW HAMPSHIRE STRICT PRODUCTS LIABILITY (DESIGN DEFECT)............183

COUNT 78 NEW HAMPSHIRE STRICT PRODUCTS LIABILITY (FAILURE TO WARN)........186

COUNT 79 VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT
(N.H. REV. STAT. ANN. §§ 358-A:1 *ET SEQ.*) ......................................................187

COUNT 80 NEW JERSEY STRICT PRODUCTS LIABILITY (DESIGN DEFECT).....................190

COUNT 81 NEW JERSEY STRICT PRODUCTS LIABILITY (FAILURE TO WARN)................192

COUNT 82 VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
(N.J. STAT. ANN. §§ 56:8-1 *ET SEQ.*) .................................................................194

COUNT 83 NEW MEXICO STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ..................196

COUNT 84 NEW MEXICO STRICT PRODUCTS LIABILITY (FAILURE TO WARN) ..............198

COUNT 85 VIOLATION OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT
(N.M. STAT. ANN. §§ 57-12-1 *ET SEQ.*)..............................................................200

COUNT 86 NEW YORK STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ......................202

COUNT 87 NEW YORK STRICT PRODUCTS LIABILITY (FAILURE TO WARN) .................204

COUNT 88 NORTH CAROLINA PRODUCTS LIABILITY (DESIGN DEFECT) ......................206

COUNT 89 NORTH CAROLINA PRODUCTS LIABILITY (FAILURE TO WARN) .................208

COUNT 90 VIOLATION OF NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE
PRACTICE ACT (N.C. GEN. STAT. §§ 75-1.1 *ET SEQ.*) .........................................210

COUNT 91 NORTH DAKOTA STRICT PRODUCTS LIABILITY (DESIGN DEFECT).............212

COUNT 92 NORTH DAKOTA STRICT PRODUCTS LIABILITY (FAILURE TO WARN) .........214

COUNT 93 OHIO NEGLIGENCE (DESIGN DEFECT).........................................................216

COUNT 94 OHIO NEGLIGENCE (FAILURE TO WARN)....................................................218

COUNT 95 VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT
    (OHIO REV. CODE ANN. §§ 1345.01 *ET SEQ.*) ....................................................220

COUNT 96 OKLAHOMA STRICT PRODUCTS LIABILITY (DESIGN DEFECT)....................222

COUNT 97 OKLAHOMA STRICT PRODUCTS LIABILITY (FAILURE TO WARN)................224

COUNT 98 VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT
    (OKLA. STAT. TIT. 15 §§ 751 *ET SEQ.*)................................................................226

COUNT 99 OREGON STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ...........................228

COUNT 100 OREGON STRICT PRODUCTS LIABILITY (FAILURE TO WARN) ...................231

COUNT 101 VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT
    (OR. REV. STAT. §§ 646.605 *ET SEQ.*)................................................................232

COUNT 102 PENNSYLVANIA STRICT PRODUCTS LIABILITY (DESIGN DEFECT)..............234

COUNT 103 PENNSYLVANIA STRICT PRODUCTS LIABILITY (FAILURE TO WARN).........237

COUNT 104 VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND
    CONSUMER PROTECTION LAW (73 PA. CONS. STAT. §§ 201-1 *ET SEQ.*) ............238

COUNT 105 RHODE ISLAND STRICT PRODUCTS LIABILITY (DESIGN DEFECT)..............240

COUNT 106 RHODE ISLAND STRICT PRODUCTS LIABILITY (FAILURE TO WARN)..........242

COUNT 107 VIOLATION OF THE RHODE ISLAND DECEPTIVE TRADE PRACTICES ACT
    (R.I. GEN LAWS ANN. §§ 6-13.1-1 *ET SEQ.*).......................................................244

COUNT 108 SOUTH CAROLINA STRICT PRODUCTS LIABILITY (DESIGN DEFECT)..........245

COUNT 109 SOUTH CAROLINA STRICT PRODUCTS LIABILITY (FAILURE TO WARN).....248

COUNT 110 SOUTH DAKOTA STRICT PRODUCTS LIABILITY (DESIGN DEFECT)..............249

COUNT 111 SOUTH DAKOTA STRICT PRODUCTS LIABILITY (FAILURE TO WARN)........252

COUNT 112 VIOLATION OF THE SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND
      CONSUMER PROTECTION LAW (S.D. CODIFIED LAWS §§ 37-24-1 *ET SEQ.*) .......254

COUNT 113 TENNESSEE STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ....................256

COUNT 114 TENNESSEE STRICT PRODUCTS LIABILITY (FAILURE TO WARN) ...............258

COUNT 115 VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT
      (TENN. CODE ANN. §§ 47-18-101 *ET SEQ.*)..........................................260

COUNT 116 TEXAS STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ...........................262

COUNT 117 TEXAS STRICT PRODUCTS LIABILITY (FAILURE TO WARN) .......................264

COUNT 118 UTAH STRICT PRODUCTS LIABILITY (DESIGN DEFECT)..............................266

COUNT 119 UTAH STRICT PRODUCTS LIABILITY (FAILURE TO WARN).........................268

COUNT 120 VIOLATION OF THE UTAH CONSUMER SALES PRACTICES ACT
      (UTAH CODE ANN. §§ 13-11 *ET SEQ.*)................................................270

COUNT 121 VERMONT STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ......................272

COUNT 122 VERMONT STRICT PRODUCTS LIABILITY (FAILURE TO WARN) .................274

COUNT 123 VIRGINIA NEGLIGENCE (DESIGN DEFECT) .................................................276

COUNT 124 VIRGINIA NEGLIGENCE (FAILURE TO WARN) ............................................278

COUNT 125 WASHINGTON STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ...............280

COUNT 126 WASHINGTON STRICT PRODUCTS LIABILITY (FAILURE TO WARN) ..........282

COUNT 127 VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
      (WASH. REV. CODE ANN. §§ 19.86.010 *ET SEQ.*)................................284

COUNT 128 WEST VIRGINIA STRICT PRODUCTS LIABILITY (DESIGN DEFECT) .............286

COUNT 129 WEST VIRGINIA STRICT PRODUCTS LIABILITY (FAILURE TO WARN) .........288

Case 1:24-cv-00380-TRM-CHS   Document 1   Filed 12/06/24   Page 9 of 308   PageID #: 9

Count 130 Violation of the West Virginia Consumer Credit and
Protection Act (W. Va. Code §§ 46A-6-101 *et seq*.) ..................................290

Count 131 Wisconsin Strict Products Liability (Design Defect)....................293

Count 132 Wisconsin Strict Products Liability (Failure to Warn)...............295

**Prayer for Relief** ...................................................................................................297

x

Plaintiffs Tammy Montgomery and Mark McCabe, on behalf of themselves and others similarly situated, for their claims against defendant Mohawk Industries, Inc. allege:

## NATURE OF THE CASE

1. Plaintiffs seek to obtain what they already paid for—safe carpets and rugs fit for their intended use. While no one would think twice about the safety of their floors, Defendant knowingly coated its carpets and rugs with dangerous carcinogens—the infamous "forever chemicals" known as PFASs (the "PFAS Carpet Products"). The presence of these PFAS Carpet Products contaminate the homes and indoor spaces where they are installed and increase the risk of adverse health events, such as various cancers and reproductive issues, of those who encounter the PFAS Carpet Products.

## PARTIES

2. Plaintiff Tammy Montgomery is an adult resident of Maryville, Tennessee and resided in Maryville, Tennessee when she purchased and installed a PFAS Carpet Product, specifically Mohawk-branded STAINMASTER® Essentials carpet, for use throughout her entire personal residence in 2015. This PFAS Carpet Product remains in Plaintiff Montgomery's home. Plaintiff Montgomery has suffered economic harm from Defendant's wrongful conduct, including, but not limited to, Defendant's violations of products liability and consumer protection laws. Plaintiff Mongomery never would have purchased and installed Defendant's PFAS Carpet Products had Defendant warned about the presence of PFASs or their harmful human effects when ingested or inhaled.

1

3. Plaintiff Mark McCabe is an adult resident of Lanesville, Indiana and resided in Lanesville, Indiana when he purchased and installed a PFAS Carpet Product, specifically, Mohawk-branded stain resistant carpet, for use throughout his basement in his personal residence in approximately 2002. This PFAS Carpet Product remains in Plaintiff McCabe's home. Plaintiff McCabe has suffered economic harm from Defendant's wrongful conduct, including, but not limited to, Defendant's violations of products liability and consumer protection laws. Plaintiff McCabe never would have purchased Defendant's PFAS Carpet Products had Defendant warned about the presence of PFASs or their harmful human effects when ingested or inhaled.

4. Defendant Mohawk Industries, Inc. ("Mohawk") is a Delaware corporation with its principal place of business in Calhoun, Georgia. In 1956, "Mohawk Carpet Mills" merged with "Alexander Smith, Inc." to become "Mohasco Corporation," making its way onto the Fortune 500 rankings. In 1988, Mohasco Corporation was purchased by "MHS Holdings" in a leveraged buyout, and the carpet sector was spun off from the Mohasco company to form Mohawk. Today, Mohawk is a publicly traded company under the ticker symbol "MHK," after first going public in 1992 under the ticker symbol "MWK."[1]

5. Mohawk is one of the world's leading carpet manufacturers holding approximately 12% market share as of 2024. Mohawk operates through three main business segments,

---

[1]   Funding Universe, *Mohawk Industries, Inc. History*, https://www.fundinguniverse.com/company-histories/mohawk-industries-inc-history/#google_vignette (last visited Nov. 14, 2024).

including "Global Ceramic," "Flooring North America," and "Flooring Rest of World." Flooring North America is one of the world's largest suppliers of premium carpet, rugs, laminate, sheet vinyl, luxury vinyl tile and wood flooring in North America for both commercial and residential use. This business segment includes numerous brand names, such as Mohawk, Karastan, Godfrey Hirst, Durkan, Mohawk Home, Quick-Step, Pergo, and IVC Resilient Design. Other brand names operating under Mohawk include, but are not limited to, Aladdin, American Olean, Century, Columbia, Complete Countertops, Dal-Tile, Eliane, Feltex, Marazzi, Moduleo, and Ragno.[2] Through these many brands, Mohawk's carpet manufacturing operations are fully integrated, from design and material sourcing through the end distribution process. Along with carpets and rugs, Mohawk averages approximately one billion in revenue.

6. At all relevant times, Defendant conducted business and derived substantial revenue from manufacturing and distributing PFAS Carpet Products within the State of Tennessee and in this District.

7. The harmful effects on humans and the environment are a direct result of Defendant's manufacture and sale of PFAS Carpet Products here and elsewhere.

---

[2] Mohawk Industries, Inc., *About Mohawk*, https://mohawkind.com/about/# (last visited Nov. 14, 2024).

8. This Court has jurisdiction over this matter because the parties are diverse and the amount in controversy exceeds $5 million, satisfying 28 U.S.C. § 1332(d)(2) for subject matter jurisdiction.

9. This Court has personal jurisdiction over Defendant because it transacts business in this District, has substantial aggregate contacts with the State of Tennessee, including in this District, and has engaged in misconduct in this District that has had a direct, substantial, reasonably foreseeable, and intended effect of injuring people in the State of Tennessee and in this District. Defendant purposefully availed itself of the benefits of doing business in the State of Tennessee and in this District.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including Mohawk's substantial business operations in this District and Plaintiff Montgomery's purchase and personal use of PFAS Carpet Products in this District.

## FACTUAL BACKGROUND

11. Per- and Polyfluoroalkyl chemicals (collectively, "PFASs") are a large group of man-made chemicals that do not occur naturally in the environment. PFASs are comprised of carbon and fluorine atoms bound together by a chain, commonly known as "C8," "C6," or "C4" chains. There are thousands of various chemicals included under the

4

PFAS umbrella, with two of the most used and studied being perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonate ("PFOS").[3]

12. PFASs are extremely stable and almost rock-like because of their strong carbon-fluorine bonds. They repel oil and water and are resistant to heat and chemical reactions.

13. As a result of these properties, PFASs have a wide variety of industrial and commercial applications. One of the biggest uses is to treat carpets and rugs to confer stain, soil, water and/or oil resistance.

14. PFASs, however, have no environmental breakdown mechanisms. Instead, they are highly mobile, resist degradation, and bioaccumulate and biomagnify in human and animal tissues; in other words, they are "forever chemicals."[4]

15. These chemicals are absorbed by inhalation and ingestion as they spread through the air, water, surfaces, dust particles, and more.[5]

16. When humans ingest PFASs, they bind to plasma proteins in the blood and are readily absorbed and distributed throughout the body. PFASs then accumulate in the body and cause long-term damage to the blood, liver, kidneys, and other organs.

---

[3] Reference to PFAS or PFASs herein include all associated chemicals, including PFOA and PFOS.

[4] *Product – Chemical Profile for Carpets and Rugs Containing Perfluoroalkyl or Polyfluoroalkyl Substances*, 8 (Oct. 2019), https://dtsc.ca.gov/wp-content/uploads/sites/31/2020/02/Final_Product-Chemical_Profile_Carpets_Rugs_PFASs_a.pdf.

[5] *Id.*

5

17. Exposure to PFASs is linked with cancer, immunotoxicity, thyroid disease, ulcerative colitis, and high cholesterol, among other diseases.

18. PFAS-manufacturer companies, such as 3M Company ("3M") and E.I. du Pont de Nemours ("DuPont"), and PFAS-supplier companies, such as 3MDaikin America, Inc. ("Daikin")[6], and INV Performance Surfaces, LLC ("INVISTA")[7] (collectively known as PFAS "suppliers") sold PFASs to large carpet industry players, such as Mohawk. Mohawk and other carpet manufactures (collectively PFAS "manufacturers") determined that PFASs were highly soluble chemicals that conferred stain and water resistance when applied to textiles, including carpets.

19. Suppliers thus continued to create more and more PFASs and Mohawk, like the other manufacturers, added and otherwise used PFASs on almost every carpet and rug they manufactured, which was then installed in homes and businesses across America, even after they knew about serious health concerns regarding the chemicals.[8]

---

[6] Daikin is a chemical supplier and has supplied PFAS to carpet manufacturers, including Defendant, during the time period alleged in this complaint. *Id.*

[7] INVISTA owns and operates a fiber manufacturing facility in Dalton, Georgia, which was previously owned by DuPont. This entity was the owner of the StainMaster brand of carpets until Lowe's purchased the StainMaster brand from INVISTA in 2021. *See DuPont textiles Becomes INVISTA,* BuildingGreen (Oct. 1, 2003), https://www.buildinggreen.com/news-analysis/dupont-textiles-becomes-invista; *see also* Dan Primack, *Lowe's Acquires Koch Subsidiary Carpet Brand StainMaster,* AXIOS (Apr. 23, 2021), https://www.buildinggreen.com/news-analysis/dupont-textiles-becomes-invista.

[8] Yachen Zhu, et al., *Household Low Pile Carpet Usage Was Associated With Increased Serum PFAS Concentrations in 2005-2006,* National Library of Medicine (Feb. 4, 2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8104467/.

6

20. In the 1950s, scientists at 3M and other universities, such as Stanford, became aware that PFASs bind to proteins in animal and human blood.[9] In the 1960s, PFAS suppliers 3M and DuPont had already reported a large increase in sick employees who worked with the chemicals, even including dying from sudden, cancer-related illness.[10]

21. Later, the United States Environmental Protection Agency ("EPA") started to investigate the effects of PFAS chemicals and their presence in every-day commercial products, which ultimately led to an attempt to phase out certain forms of PFASs.[11]

22. Yet even after serious scrutiny from the government, suppliers and manufacturers still produced and used a variation of PFASs that were applied to carpets and rugs, claiming shorter chain versions were of no human threat. It was not until 2019 to 2020 that certain suppliers and manufacturers issued statements claiming they will completely phase out PFASs altogether by 2025.[12]

23. Unfortunately for the public, the damage has already been done. Because these PFAS chemicals do not break down like other compounds such as arsenic, lead, and radioactive polonium, PFASs stay in the environment for years. In fact, PFASs hold a

---

[9] *For 50 Years, Polluters Knew PFAS Chemicals Were Dangerous But Hid Risks From Public,* EWG, https://static.ewg.org/reports/2019/pfa-timeline/3M-DuPont-Timeline_sm.pdf (last visited Sept. 18, 2024).

[10] *DuPont, 3M Concealed Evidence of PFAS Risks,* Union of Concerned Scientists (Mar. 22, 2019), https://www.ucsusa.org/resources/dupont-3m-concealed-evidence-pfas-risks.

[11] *Id.*

[12] *3M to Exit PFAS Manufacturing by the End of 2025,* 3M News Center (Dec. 20, 2022), https://news.3m.com/2022-12-20-3M-to-Exit-PFAS-Manufacturing-by-the-End-of-2025.

7

half-life of up to five years before the human body can break down and dispose of their contents. In comparison, arsenic, lead, and radioactive polonium have shorter half-lives, including less than two months, and even a day. [13]

24. Further, fetuses, infants, and toddlers are all more susceptible to PFASs' harmful effects. PFASs have been shown to pass through mothers' umbilical cords and into fetuses' bloodstreams, which can cause serious birth defects. Moreover, infants and toddlers spend most of their time on the ground with carpets and rugs that are doused in these chemicals. Because infants and toddlers practice hand-to-mouth learning and communication more than adults, they have been found to have significantly higher levels of PFASs in their bloodstream.[14] And, because of their smaller organs and general behaviors, infants and toddlers have shown to keep PFASs in their system longer and at much higher rates than in adults.[15]

---

[13] Agency for Toxic Substances and Disease Registry, *ToxGuide for Perfluoroalkyls*, Center for Disease Control and Prevention (Mar. 2020), https://www.atsdr.cdc.gov/toxguides/toxguide-200.pdf.

[14] Environmental Working Group, *Update to EWG Petition to EPA Concerning DuPont's Response to EPA's inquiry of Possible TSCA Section 8(E) Substantial Risk Reporting Violations* (June 15, 2007), https://www.ewg.org/news-insights/official-correspondence/update-ewg-petition-epa-concerning-duponts-response-epas.

[15] Department of Toxic Substances Control, Government of California, *Effective July 1, 2021: Carpets and Rugs with Perfluoroalkyl or Polyfluoroalkyl Substances (PFASs)* (2021), https://dtsc.ca.gov/scp/carpets-and-rugs-with-perfluoroalkyl-and-polyfluoroalkyl-substances-pfass/.

8

25. Indeed, PFASs are so insidious that they have been found in the blood of more than 98% of Americans.[16]

26. Even knowing all these statistics, studies, and health effects, for decades, Mohawk and other manufacturers continued to add PFASs onto almost every carpet and rug product they sold.[17] Thus, millions of Americans were and continue to be exposed to PFASs indoors through carpets or rugs.[18]

27. Further, Americans spend approximately 90% of their time indoors. Even if an individual has chosen to only have hardwood floor systems throughout her personal residence, she still may encounter these toxic, PFAS Carpet Products at her workplace, her family and friends' residences, public buildings, and more. Essentially, it becomes almost impossible to escape the pollutants these suppliers and manufacturers have placed indoors.

28. Even if all PFAS use is phased out by the end of 2025, it will not erase the PFASs present in our environment due to the chemicals' inability to degrade.

29. The appropriate remedy is to have Mohawk remove all PFAS Carpet Products and adequately compensate for the damage it has caused and continues to cause.

---

[16] Extinguishing the risk of forever chemicals: State of the science to protect first responders, https://blogs.cdc.gov/niosh-science-blog/2021/11/09/pfas/

[17] *Product – Chemical Profile for Carpets and Rugs Containing Perfluoroalkyl or Polyfluoroalkyl Substances*, 46 (Oct. 2019), https://dtsc.ca.gov/wp-content/uploads/sites/31/2020/02/Final_Product-Chemical_Profile_Carpets_Rugs_PFASs_a.pdf.

[18] Approximately 58.8% of the flooring industry are carpets and rugs in the United States. *Id.*

9

# I.     PFAS Creation

30. PFAS chemicals were created in the 1940s through the construction of fluorine and carbon bonds through electrochemical fluorination, ECF, making one of the strongest known chemical bonds.[19]

31. In the 1950s, 3M created "Scotchgard," a chemical water repellent that would repel liquids "like water off a duck's back."[20]

32. At the same time, in the 1950s, 3M sold PFAS chemicals to DuPont. DuPont then used PFASs to manufacture its infamous non-stick coating, Teflon.[21]

33. However, during these initial startup years, 3M and other scientists became increasingly aware of just how long-lasting these chemicals are. In 1971, PFAS creators at 3M stated there was "no natural sink" for the fluorocarbons and that they could remain on the earth "unchanged for many thousands of years."[22]

---

[19] *See* C.D. Metcalfe, et al., *An Introduction to the Sources, Fate, Occurrence and effects of Endorcrine Disrupting Chemicals Released into the Environment,* ScienceDirect (May 1, 2022), https://www.sciencedirect.com/science/article/pii/S0013935121019599.

[20] The National Inventors Hall of Fame, The Happy Accident Behind the Invention of Scotchgard, https://www.invent.org/blog/inventors/patsy-sherman-samuel-smith

[21] Sharon Lerner, et al., How 3M Executives Convinced a Scientist the Forever Chemicals She Found in Human Blood Were Safe, Pro Publica (May 20, 2024), https://www.propublica.org/article/3m-forever-chemicals-pfas-pfos-inside-story#:~:text=In%20the%20early%20'50s%2C%203M,and%20impossible%20to%20wipe%20off.

[22] 3M Memorandum from H.G. Bryce to R.M. Adams on Ecological Aspects of Fluorocarbons at 1, 4 (Sept. 13, 1971), https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1088.pdf.

10

34. Indeed, these toxic chemicals resist degradation due to light, water, and biological processes. Because of their makeup, PFAS chemicals bioaccumulate and biomagnify, accumulating in living organisms through the duration of their lives.[23]

35. Further, suppliers became increasingly aware of the harmful effects PFASs have on the environment and, more importantly, humans. In 1964, DuPont employees working in PFAS-based Teflon manufacturing fell ill after the manufacturing area was moved to an enclosed working space. Although first being diagnosed with "polymer-fume fever" (exhibiting shakes, fevers, tightness in chest, and more symptoms), both DuPont and 3M suspected their newfound chemicals were to blame.[24]

36. Nonetheless, suppliers continued to use more PFASs and created more ways to utilize the strong fluorine-carbon bonds, such as stain resistance.

## II. The Carpet Industry and Carpet Manufacturing

37. Carpeting is ubiquitous in American homes and saw a meteoric rise as part of the post-World War II building boom. During that time, residential customers shifted from seeking rugs for wood floors to requesting carpet.

---

[23] *See* Alessio Filippo Peritore, et al., *Current Review of Increasing Animal Health Threat of Per- and Polyfloroalkyl Substances (PFAS): Harms, Limitations, and Alternatives to Manage Their Toxicity*, National Library of Medicine, National Center for Biotechnology Information (July 2023), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC10380748/.

[24] Charles E. Lewis & Gerald R. Kerby, *An Epidemic of Polymer-Fume Fever*, 191 JAMA 375-78 (Feb. 1, 1965), https://static.ewg.org/reports/2019/pfa-timeline/1962_Teflon-Cigarette-Study.pdf.

11

38. DuPont and others manufactured synthetic fibers for carpet, mainly nylon filament. In 1952, DuPont developed a specific carpet nylon filament then introduced 501 nylon in 1958 that went into carpet yarn. In 1972, DuPont added antistatic properties to its nylon to distinguish itself from its competitors.[25]

39. Other companies also entered the nylon market after World War II, including BASF, Monsanto, and Rohm and Haas.

40. The carpet manufacturing process has been largely unchanged for decades. Carpet is typically produced in carpet mills and goes through the following steps: twisting, heating, setting, tufting, dying, and coating.[26]

41. First, in the twisting phase, nylon bulk continuous filament, known as BCF, is twisted together to create larger fibers. Carpet manufacturers typically purchase BCF from one of the chemical companies that create synthetic products. Larger companies, such as Mohawk, create their own BCF as part of their vertical integration process.

42. Second, the newly twisted fibers go through a heat setting process to lock the twist in using a combination of pressure, heat, and steam.

---

[25] Transcript of Interview with Thomas "Tom" McAndrews, Jan. and Feb. 2018 at p.67, available at https://digital.hagley.org/2010215_20180613_McAndrews_transcript_uneditedTranscript McAndrews (hereafter "McAndrews Transcript"). Mr. McAndrews is largely credited with inventing STAINMASTER and stain-resistant carpeting.

[26] *See, e.g.,* How is Carpet Made – Did You Know?, available at How Carpet is Made - Did You Know? (youtube.com).

12

43. Third, carpet fibers are tufted, or stitched, through a backing material to create the carpet. A secondary backing material may be applied to further strengthen the carpet.

44. Fourth, dyes are applied to the now manufactured carpet to give it the desired color. The newly dyed carpet goes through a washing process to lock in the dye.

45. Fifth, coatings are applied to the carpet. The first step is to apply PFAS coating to make the carpet stain resistant. As the screenshot below shows, the carpet is run through this liquid coating. The carpet then goes through another step to "fix" in, or lock in, the PFAS coating before the carpet is dried.



13

46. Finally, for many carpets, including STAINMASTER carpets, a spray bar applies a Teflon coating on top of the carpet. This is the very same Teflon used on cooking pans.



47. As the below sample shows, just like pans in the kitchen, the Teflon treated carpet on the right shows fruit punch that beads up on the top and can literally slide off while the untreated carpet on the left absorbed the fruit punch.



14

## III. The Development of "Stain Resistant" Carpets

48. By the 1970s, the market for nylon in the carpet industry was flattening or maturing, meaning there was no additional room for growth among competitors.

49. At the same time, there were more carpet mills, which meant there was too much carpet being produced and not enough people willing to buy it.[27]

50. Suppliers and manufacturers thus looked for ways to develop new technologies to increase their market share.[28]

51. DuPont, for example, developed Antron to hide and/or resist dirt using a "cross-sectional construction," but the product would still stain.[29]

52. DuPont began looking for alternatives and wanted to brand a consumer product to see if that "could be effective in selling an ingredient product."[30]

53. DuPont hired a research firm to understand carpet market dynamics and how it could "solve" the carpet problem. That research found Americans installed carpets in droves but the carpet was highly likely to stain and to stain quickly. Thus, carpet fell out of favor because Americans were turning to rugs, wood, and tile in their homes.[31]

---

[27] McAndrews Transcript at pp. 63, 69.

[28] *See, e.g.*, McAndrews Transcript at p. 60.

[29] McAndrews Transcript at p. 68.

[30] McAndrews Transcript at p. 65.

[31] McAndrews Transcript at p. 70.

15

54. DuPont developed STAINMASTER carpet in tandem with the carpet mills to bolster sales of carpet throughout the United States. Around this time, DuPont knew other suppliers were looking to develop a similar product and thus rushed to beat others to the punch and put STAINMASTER on the market.

55. First, DuPont took a "commodity chemical that was on the streets for sale" and added anti-stain technology, i.e., PFASs. Next, DuPont decided to add Teflon to ensure the carpet repelled stains.[32] STAINMASTER started with SR500, a polymer that was readily available. DuPont then added Teflon and a "soil product."[33]

56. DuPont had to figure out how to apply the product because it was a topical treatment that had to be added after the carpet was made.

57. So, DuPont went to its then largest customers, and asked them to run tests with the new product.[34]

58. DuPont's research and development team also developed a specialized spray bar for the carpet mills to allow the STAINMASTER chemicals to be applied to finished carpet.[35]

---

[32] McAndrews Transcript at p. 89.

[33] *Id.* at p. 142.

[34] *Id.* at p. 91.

[35] *Id.* at p. 61.

16

59. Competitors like Monsanto and Allied Chemical began making a similar product but had to buy Teflon from DuPont. Thus, there was no way to differentiate the stain resistant, PFAS-filled products produced by DuPont versus the others.[36]

60. DuPont provided its PFAS coatings with the carpet fibers when it sold them to the carpet mill.[37] DuPont certified how much had to be applied to be a STAINMASTER certified product.

61. DuPont also sold a competitor product along with 3M and BASF, who would then similarly sell the product with fiber or separately sell PFASs to the carpet mills.[38]

62. STAINMASTER was enormously successful; it tripled revenues for DuPont and was named product of the year by Fortune magazine and the Wall Street Journal.

63. Competitor products followed, including Scotchgard and others.

64. At bottom, the introduction of STAINMASTER kicked off the carpet industry's obsession with PFAS chemicals and ensured that almost all carpets and rugs in the United States were treated with PFASs.

65. Today, Mohawk is the second largest carpet manufacturer in the United States with approximately 11.9% of the United States carpet market share.

---

[36] *Id.* at p. 143.

[37] *Id.* at p. 150.

[38] *Id.* at p. 151.

17

66. Mohawk has purchased PFASs and PFAS machinery from various suppliers since the 1970s to coat their carpets and rugs in PFASs to deem them stain, soil, and grease resistant, and Mohawk has reaped huge monetary profits for doing so.

67. Mohawk also applied PFASs to carpet fibers before the carpets were manufactured, during the manufacturing process, and after the manufacturing process in a separate finishing facility or in stores for consumer sale, or even after the carpets were sold to the public as it was made into a household stain solution bottle, like any other household cleaning product.[39]

68. In a study conducted by the Changing Markets Foundation in 2018, both randomly selected Mohawk carpet samples were detected to have PFASs. The methodology used was to select a carpet product that was advertised as the most "environmentally friendly" or "ecological," and one that was the most popular carpet purchase among consumers.[40] The two Mohawk samples chosen were the "Bigelow Mindful" commercial carpet as the ecological sample, and the "Air.o New Beginnings with Pad, Nouveau" residential carpet

---

[39] *Product – Chemical Profile for Carpets and Rugs Containing Perfluoroalkyl or Polyfluoroalkyl Substances,* 12 (Oct. 2019) https://dtsc.ca.gov/wp-content/uploads/sites/31/2020/02/Final_Product-Chemical_Profile_Carpets_Rugs_PFASs_a.pdf.

[40] When it was not possible to find an ecological carpet product, the study chose a carpet product with features that seemed common the carpet manufacturer. *Testing Carpet for Toxics, Chemicals Affecting Human Health and Hindering the Circular Economy,* https://www.no-burn.org/wp-content/uploads/FINAL-Testing-Carpet-for-Toxics.pdf (last visited Nov. 16, 2024).

18

as the most popular sample. Both random samples contained multiple types of PFASs within their fibers, "indicating a potential stain-repellent finish."[41]

69. The industry trade group representing around 90% of United States manufacturers estimates that most commercial and residential carpets are currently treated with PFASs.[42]

70. However, according to a prominent manufacturer itself, PFASs will increase product performance on lower-quality carpet fibers only and for a limited amount of time. Nevertheless, Mohawk continued to use PFASs in its carpet and rug productions.

71. A study published by Indiana University found "strong associations between PFAS levels in carpet and dust pairs," which suggests that carpets can be both a source and a sink for PFASs.[43]

## IV.    Indoor Transmission of PFAS Through Textiles

72. Because of their chemical makeup, PFASs are highly mobile and degrade slowly. In normal use, PFAS Carpet Products release PFASs into the surrounding air and dust,

---

[41] *Id*. at 35.

[42] *Id.*

[43] *Chemosphere,* Volume 251, 126771 (July 2020), https://www.fosan.org/wp-content/uploads/2023/04/PFAS-nella-polvere-e-neitappeti-degli-asili-nido.pdf.

19

which humans then either ingest or inhale. Surface abrasion can release these PFAS chemicals from textile fibers via small particles, which can then become resuspended.[44]

73. When humans ingest or inhale PFASs stemming from textiles in their surroundings, PFASs enter their bloodstreams and stay there for an alarming amount of time. According to the Centers for Disease Control and Prevention, the elimination half-lives of PFOA and PFOS (two of the most common types of PFASs), or the length of time for the concentration of those substances in the human body to decrease by one-half, are 3.5 years and 4.8 years. In comparison, the half-lives of arsenic, lead, and radioactive polonium in human blood are around 10 hours, 32 days, and 40 days, respectively.[45]

74. When compared to outdoor air samples, indoor air can have more than 1,000 times higher levels of PFAS-related chemicals such as Fluorotelomer alcohols ("FTOH"), a sub-class of PFAS chemicals. Carpets and rugs contain this FTOH class of PFAS chemicals when being manufactured or through intermediate degradation products.[46]

75. When measured via vacuum dust samples from almost 40 homes, researchers found correlations between the amount of PFASs in dust and the presence of carpeting

---

[44] *Product-Chemical Profile for Carpets and Rugs Containing Perfluoroalkyl or Polyfluoroalkyl Substances*, 15 (Oct. 2019), at p. 48, available at https://dtsc.ca.gov/wp-content/uploads/sites/31/2020/02/Final_Product_Chemical_Profile_Carpets_Rugs_PFASs_a.pdf.

[45] Li Y, Fletcher T, Mucs D, et al., *Half-lives of PFOS, PFHxS and PFOA after end of exposure to contaminated drinking water*, Occup Environ Med 75:46–51 (2018), https://doi.org/10.1136/oemed2017-104651.

[46] *Id.* at 48.

inside of the home.[47] A North Carolina study conducted on young adults found a 57% increase in PFASs levels in participants who admitted they vacuumed less frequently than others.[48]

76. Further, researchers have found that carpet used in institutional settings may contain higher amounts of PFASs due to its use in high traffic areas, also correlating to the amounts found in the bloodstreams of workers who were present in those spaces.[49]

77. An average American spends more than 90% of his or her time in indoor settings. Thus, ingestion and inhalation of PFASs found in indoor dust and particles leads to an alarming exposure risk because PFASs enter human bloodstreams and can cause extremely harmful effects.[50]

## V. Defendant's Knowledge of PFAS' Harmful Effects

78. Exposure to PFASs is detrimental to human and animal health, including: (1) stunted growth, learning, and behavior of infants and children; (2) reproductive delays and infertility issues; (3) hormonal imbalances; (4) increased cholesterol levels; (5) modulation of the immune system; (6) increased risk of certain cancers; (7) alteration in

---

[47] *Id.*

[48] *Id.* at 69.

[49] *Id.* at 48.

[50] *Id.* at 52.

immunological and thyroid function; (8) liver disease; (9) lipid and insulin dysregulation; (10) kidney disease; and (11) increased risk of ulcerative colitis.[51]

79. New California regulations forced Mohawk to discontinue its PFAS chemicals use in carpet products, starting in December 2022.[52] However, Mohawk has never addressed the existing health hazard from carpets already installed in people's homes even where other manufacturers have very recently claimed they will phase out PFASs.

## VI.    Regulations Against PFAS-Using Companies

80. In May 2015, The Madrid Statement on PFASs, scientists, and other professionals concerned about the continued production and release of PFASs into the environment, called for greater regulation, restrictions, limits on the manufacture and handling of any PFAS-containing product, and to develop safe, non-fluorinated alternatives to avoid long-term health effects from PFASs.[53]

81. In 2016, the EPA released a lifetime health advisory level ("HAL") for drinking water and health effects support documents for PFASs, and the National Toxicology Program of the United States Department of Health and Human Services and the International Agency for Research on Cancer both released analyses on the growing

---

[51] *Id.* at 37-38.

[52] https://calsafer.dtsc.ca.gov/documentitem/index/?guid=0e622a93-1d54-446d-905e-914cc0af7ea0.

[53] A. Blum et al., *The Madrid Statement on Poly- and Perfluoroalkyl Substances (PFASs)*, 123 Env't Health Perspectives 107-11, http://dx.doi.org/10.1289/ehp.1509934.

research regarding the adverse effects of fluorochemicals. These studies concluded that PFASs are presumed to be an "immune hazard to humans" based on a "consistent pattern of findings" of adverse immune effects in human (epidemiology) studies.[54]

82. Put plainly by the National Institute of Health in a 2016 NTP Monograph Health Assessment, "PFOA and PFOS are immune hazards to humans based on evidence from human and animal studies."[55]

83. The National Institute of Health has now conducted multiple studies involving short-chain PFAS exposure and toxicity levels and found these shorter-chain compounds still affected the same organ systems, the liver, and thyroid hormones, in a 28-day toxicity study. Also, both long chain and short chain compounds, including 16 different types of PFASs, altered mitochondrial functions.[56]

## VII. The Lasting Effects of PFASs in Carpets and Appropriate Remedies

84. Even if Mohawk phases out PFASs, these chemicals will remain a legacy chemical issue because of their 10-to-20-year life span on carpets and rugs currently in use.

---

[54] *See* Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate, 81 Fed. Reg. 33, 250 (May 25, 2016); *see also* NTP Monograph on Immunotoxicity Associated with Exposure to Perfluorooctanoic Acid or Perfluorooctane Sulfonate, 1, 17, 19, NTP (Sept. 2016), https://ntp.niehs.nih.gov/ntp/ohat/pfoa_pfos/pfoa_pfosmonograph_508.pdf.

[55] *Per- and Polyfluoroalkyl Substances (PFAS)*, NATIONAL TOXICOLOGY PROGRAM, https://ntp.niehs.nih.gov/whatwestudy/topics/pfas#:~:text=Long%2D%20and%20short%2Dchai n%20PFAS,compared%20to%20long%2Dchain%20PFAS.

[56] *Id.*

85. In 2017, Healthy Building Network concluded that routine wear and tear, as well as any type of cleaning, dislodges PFASs from carpet fibers into air and dust, while humans inhale or ingest PFASs throughout the entire lifecycle of production use, and disposal.[57]

86. Because of the compounds' chemical makeup and lack of degradation mixed with PFASs half-lives to break down within the bloodstream, these toxins will be around for decades if nothing is done.

87. Mohawk consciously disregarded the health effects of PFASs by continuing to use them on their consumer products. Mohawk, who holds almost 12% of the carpet industry market share, chose to intentionally add these chemicals into the products it created and thus into the lives of everyday Americans at their workplace, homes, and even their children's daycare facilities.

88. Studies have shown that replacing PFAS-containing carpet and furniture reduced dust concentrations by 78%, indicating the significance that these sources had and continue to have on indoor pollutants and humans' health.[58]

---

[57] Jim Vallette, et al., *Eliminating Toxics in Carpet: Lessons for the Future of Recycling*, HEALTHY BUILDING NETWORK (Oct. 2017), https://habitablefuture.org/wp-content/uploads/2024/03/81-eliminatingtoxics-in-carpet-lessons-for-the-future-of-recycling.pdf.

[58] Maya Gilchrist, *PFAS in the Textile and Leather Industries*, MINNESOTA POLLUTION CONTROL AGENCY (May 2023), https://www.pca.state.mn.us/sites/default/files/gp3-06.pdf (citing Young, A. S., et al. (2021); Anna S. Young, et al., Impact of "Healthier" Materials Interventions on Dust Concentrations of Per and Polyfluoroalkyl Substances, Polybrominated Diphenyl Ethers, and Organophosphate Esters, ENVIRONMENT INTERNATIONAL, (May 2021), https://doi.org/10.1016/j.envint.2020.106151.

24

89. Plaintiffs, for their personal use, purchased PFAS Carpet Products made by Mohawk.

90. PFAS Carpet Products are premium products marketed with stain and soil resistance technology and Plaintiffs paid a premium price for them. The premium status and price are due to two factors: first, the leading-market status of the reputable "Mohawk" brand and second, Mohawk's marketing, which was and is designed to influence consumers to believe that the PFAS Carpet Products were safe, effective, and well-tested.

91. Plaintiffs would not have paid to install a PFAS Carpet Product had they known it contained toxic PFAS contamination. Instead, Plaintiffs would have purchased and used alternative flooring options.

92. Plaintiffs and the Class of similarly situated persons have suffered an ascertainable economic loss from their purchase, use, and installation of PFAS Carpet Products.

93. Plaintiff Montgomery purchased PFAS Carpet Products in the greater Knoxville, Tennessee area in approximately 2015 and installed it throughout her personal home. Plaintiff Montgomery suffered economic harm from Mohawk's wrongful conduct, as alleged, including, but not limited to, violations of state products liability and consumer protection laws. Plaintiff Montgomery never would have purchased Mohawk's PFAS Carpet Products had Mohawk warned about the harms of the chemical compounds that

25

it was aware of. Instead, Plaintiff Montgomery would have purchased and used a safer, alternative carpet or other flooring that was not contaminated by PFASs.

94. Plaintiff McCabe purchased a PFAS Carpet Product in the Lanesville, Indiana area, located outside of Louisville, Kentucky in approximately 2002 and installed it in his personal residence. Plaintiff McCabe suffered economic harm from Mohawk's wrongful conduct, as alleged, including, but not limited to, violations of state products liability and consumer protection laws. Plaintiff McCabe never would have purchased Mohawk's PFAS Carpet Product had Mohawk warned about the harms of the chemical compounds that it was aware of. Instead, Plaintiff McCabe would have purchased and used a safer, alternative carpet or other flooring that was not contaminated by PFASs.

95. Plaintiffs bring these claims for themselves and for a Class of similarly situated persons who purchased PFAS Carpet Products.

EQUITABLE TOLLING OF THE STATUTES OF LIMITATIONS

96. Any applicable statutes of limitation have been tolled by (1) the delayed discovery doctrine, as Plaintiffs and the putative class members did not and could not—through no fault or lack of diligence—reasonably have discovered Mohawk's conduct alleged herein until shortly before the filing of this Complaint; and (2) the fraudulent concealment doctrine due to Mohawk's knowing, purposeful, and active concealment and denial of all facts alleged herein including but not limited to its knowledge that the PFASs contained in its PFAS Carpet Products were and continue to be harmful.

26

97. Mohawk had exclusive knowledge that its PFAS Carpet Products contained PFASs and deceptively marketed and/or omitted material information about its PFAS Carpet Products to Plaintiffs, members of the Class, and the public.

98. Under the circumstances, Mohawk had a duty to disclose the nature, significance, and consequences of the PFASs contained in its PFAS Carpet Products. Accordingly, Mohawk is estopped from relying on any statute of limitations.

<div align="center">CLASS ACTION ALLEGATIONS</div>

99. Plaintiffs bring this action individually and on behalf of all others similarly situated under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) as representatives of a Class of purchasers seeking relief defined as:

> Any person in the United States who purchased a Mohawk PFAS Carpet Product for personal or household use from the applicable statute of limitations to the date of trial in this matter.

100. Excluded from this Class are Defendant, its current employees, officers, directors, legal representatives, heirs, successors, and affiliated companies; Class counsel and their employees; and judicial officers and their immediate families as court staff assigned to the case.

101. This action has been brought and is properly maintained as a class action under Federal Rule of Civil Procedure 23(b)(2) and (3) because there is a well-defined community of interest and the proposed Class meets the requirements of Rule 23.

102. Mohawk engaged in a common course of conduct giving rise to the rights Plaintiffs seek to enforce. Similar or identical statutory and common law violations, business practices, and injuries are involved.

103. The Class is so numerous that joinder of all members would be impracticable. While the exact number of Class members is unknown, given the commerce at issue and Mohawk's significant market share, there are at least hundreds of thousands of Class members.

104. Plaintiffs' claims are typical of the Class. Because of Mohawk's misconduct, Plaintiffs and the proposed Class were damaged and have incurred economic loss because of buying the PFAS Carpet Products believed to be safe.

105. Plaintiffs will fairly and adequately protect and represent the interests of the Class. The interests of Plaintiffs are in accordance with those of the Class. Plaintiffs have no interests antagonistic to the Class members. Plaintiffs hired attorneys experienced in the prosecution of consumer class actions and Plaintiffs intend to prosecute this action vigorously. Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

106. Questions of law and fact common to all Class members predominate over questions which affect only individual Class members, should they arise, because Mohawk acted on grounds generally applicable to the Class. All Class members bought Mohawk's PFAS Carpet Products and have suffered an economic loss because of

28

Mohawk's deceptions and omissions. Thus, there is a well-defined community of interest in the questions of law and facts common to all Class members.

107. Questions of law and fact common to the Class include, but are not limited to:

    a.  Whether Mohawk's PFAS Carpet Products contain dangerous levels of PFASs;

    b.  When Mohawk knew or should have known its PFAS Carpet Products contain dangerous levels of PFASs;

    c.  Whether Mohawk knew or should have known that PFASs are harmful;

    d.  Whether Mohawk's conduct violated state consumer protection laws;

    e.  Whether Plaintiffs and the proposed Class have been injured and, if so, what is the proper measure of damages;

    f.  Whether Plaintiffs and the proposed Class have a right to recover damages for Mohawk's misconduct; and

    g.  Whether Plaintiffs and the proposed Class have the right to injunctive, declaratory, or other equitable relief and attorneys' fees.

108. The case is appropriate for certification under Rule 23(b)(2) because even if separate cases could be brought by individuals, the resulting multiplicity of lawsuits would cause undue hardship, burden, and expense for the Court and the litigants, as well as create a risk of inconsistent rulings across the country, which might be dispositive of the interests of individuals who are not parties. A class action furthers the important public interest of containing legal expenses, efficiently resolving many claims with common facts in a single forum simultaneously, and without unnecessary duplication of effort and drain on critical judicial resources. The class action method presents far fewer

29

management difficulties than individual cases filed in other districts and provides the benefit of comprehensive supervision by a single court.

109. The case is appropriate for certification under Rule 23(b)(3) because the questions of law and fact common to the class far outweigh any individual issues and, under these facts, a class action is superior to other methods and is the most efficient method for the fair and efficient adjudication of the dispute. Because of the nature of the individual Class members' claims and the cost of the PFAS Carpet Products, few, if any individuals, would seek legal redress against Mohawk because the costs of litigation would far exceed any potential economic recovery. Absent a class action, individuals will continue to suffer economic losses for which they would have no remedy, and Mohawk will continue its misconduct with no accountability, while retaining the profits of its ill-gotten gains.

## CAUSES OF ACTION

### COUNT 1
### ALABAMA EXTENDED MANUFACTURER'S LIABILITY DOCTRINE (DESIGN DEFECT) ON BEHALF OF THE ALABAMA CLASS MEMBERS

110. Plaintiffs incorporate herein the allegations contained above.

111. Plaintiffs bring this claim on behalf of Class members who installed their PFAS Carpet Products in Alabama (the "Alabama Class members").

112. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

113. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the Alabama Class members, who might be foreseeably harmed by the PFAS Carpet Products.

114. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

115. Defendant failed to disclose these threats to Alabama Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

116. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Alabama Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

117. At all relevant times, Alabama Class members used their PFAS Carpet Products as intended.

118. At all relevant times, the PFAS Carpet Products reached the Alabama Class members without substantial change in the condition in which they were sold.

119. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of their PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to persons and to property.

120. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

121. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

122. As a direct and proximate result of Defendant's unreasonably dangerous design of PFAS Carpet Products, Alabama Class members have been injured by widespread and toxic PFAS contamination.

123. These and other acts by Defendant were a direct and proximate cause of damages to Alabama Class members.

<div align="center">

COUNT 2

**ALABAMA EXTENDED MANUFACTURER'S LIABILITY DOCTRINE (FAILURE TO WARN)
ON BEHALF OF THE ALABAMA CLASS MEMBERS**

</div>

124. Plaintiffs incorporate herein the allegations contained above.

125. Plaintiffs bring this claim on behalf of Class members who installed their PFAS Carpet Products in Alabama (the "Alabama Class members").

126. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of their products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the Alabama Class members.

127. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Alabama Class members of those risks.

128. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and their widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

<div align="center">33</div>

129. Defendant's inadequate warnings and instructions rendered PFAS Carpet Products defective and not reasonably safe.

130. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

131. Defendant's failure to warn the Alabama Class members proximately caused reasonably foreseeable injuries to the Alabama Class members, who would have heeded legally adequate warnings about the dangers of the PFAS Carpet Products. At all relevant times, the Alabama Class members used their PFAS Carpet Products as intended.

132. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to the Alabama Class members, those products would not have gained widespread acceptance in the marketplace, and the Alabama Class members would not have installed the PFAS Carpet Products at issue.

133. These and other acts by Defendant were a direct and proximate cause of the Alabama Class members' damages.

COUNT 3
STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
ON BEHALF OF THE ALASKA CLASS MEMBERS

134. Plaintiffs incorporate herein the allegations contained above.

135. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Alaska (the "Alaska Class members").

34

136. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

137. As manufacturers and sellers of these textiles, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the Alaska Class members, who are foreseeably harmed by PFAS Carpet Products.

138. Defendant's PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

   a. PFASs causes extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

   b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

139. Defendant failed to disclose these threats to Alaska Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

140. At all relevant times, the PFAS Carpet Products were in a defective condition and were unreasonably dangerous to Alaska Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

35

141. At all relevant times, Alaska Class members used their PFAS Carpet Products as intended.

142. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to persons and to property.

143. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

144. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

145. As a direct and proximate result of Defendant's unreasonably dangerous design of the PFAS Carpet Products, the Alaska Class members have been injured by widespread and toxic PFAS contamination.

36

146. These and other acts by Defendant were a direct and proximate cause of damage to the Alaska Class members.

CICI

COUNT 4
STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
ON BEHALF OF THE ALASKA CLASS MEMBERS

147. Plaintiffs incorporate herein the allegations contained above.

148. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Alaska (the "Alaska Class members").

149. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of their products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of their products, including Alaska Class members.

150. Despite Mohawk's superior knowledge of the risks posed by PFAS Carpet Products, Mohawk failed to warn consumers, the public, and Alaska Class members of those risks.

151. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

37

152. Defendant's inadequate warnings and instructions rendered PFAS Carpet Products defective and not reasonably safe.

153. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

154. Defendant's failure to warn proximately caused reasonably foreseeable injuries to Alaska Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, Alaska Class members used their PFAS Carpet Products as intended.

155. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to Alaska Class members, those products would not have gained widespread acceptance in the marketplace, and the Alaska Class members would not have installed the PFAS Carpet Products at issue.

156. These and other acts by Defendant were a direct and proximate cause of damage to Alaska Class members.

COUNT 5
VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION ACT (ALASKA STAT. ANN. §§ 45.471 *ET SEQ.*)
ON BEHALF OF THE ALASKA CLASS MEMBERS

157. Plaintiffs incorporate herein the allegations contained above.

158. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Alaska (the "Alaska Class members").

38

159. The Alaska Unfair Trade Practices and Consumer Protection Act (the "Alaska CPA") declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including "using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived, or damaged." Alaska Stat. Ann. § 45.50.471(b)(12).

160. The Alaska Class members are "consumers" within the meaning of Alaska Stat. Ann. § 45.50.561(4).

161. Defendant was engaged "in the conduct of trade or commerce" within the meaning of Alaska Stat. Ann. § 45.50.471(a) when it sold its PFAS Carpet Products to consumers, the Alaska Class members.

162. In the conduct of trade or commerce, Defendant knowingly concealed, suppressed, and omitted the material fact that carpets purchased by the Alaska Class members were treated with PFAS chemicals which have harmful properties, with the intent that others rely upon the concealment, suppression, or omission.

163. In purchasing their PFAS Carpet Products, the Alaska Class members were deceived by Defendant's failure to disclose that their PFAS Carpet Products were treated with harmful PFAS chemicals.

39

164. The Alaska Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

165. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

166. Defendant knew or should have known that its conduct violated the Alaska CPA.

167. Defendant owed the Alaska Class members a duty to disclose the truth about its PFAS Carpet Products because Defendant:

    a. Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Alaska Class members; and

    b. Intentionally concealed the foregoing from the Alaska Class members.

168. Defendant's conduct proximately caused injuries to the Alaska Class members.

169. The Alaska Class members were injured and suffered ascertainable loss, injury in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

170. Defendant's violations present a continuing risk to the Alaska Class members.

171. Defendant's unlawful acts and practices complained of herein affect the public interest.

172. Pursuant to Alaska Stat. Ann. § 45.50.531(a), the Alaska Class members seek "to recover for each unlawful act or practice three times the actual damages or $500, whichever is greater."

173. The Alaska Class members also seek attorneys' fees and any other just and proper relief available under the Alaska CPA.

<div align="center">

**COUNT 6**
**STRICT PRODUCTS LIABILITY (DESIGN DEFECT)**
**ON BEHALF OF THE ARIZONA CLASS MEMBERS**

</div>

174. Plaintiffs incorporate herein the allegations contained above.

175. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Arizona (the "Arizona Class members").

176. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

177. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all people, including the Arizona Class members, who might be foreseeably harmed by PFAS Carpet Products.

178. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

<div align="center">

41

</div>

179. Defendant failed to disclose these threats to the Arizona Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

180. At all relevant times, PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Arizona Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

181. At all relevant times, the Arizona Class members used their PFAS Carpet Products as intended.

182. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of their PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to people and to property.

183. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

42

184. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

185. As a direct and proximate result of Defendant's unreasonably dangerous design of PFAS Carpet Products, Arizona Class members have been injured by widespread and toxic PFAS contamination.

186. These and other acts by Defendant were a direct and proximate cause of damage to Arizona Class members.

COUNT 7
STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
ON BEHALF OF THE ARIZONA CLASS MEMBERS

187. Plaintiffs incorporate herein the allegations contained above.

188. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Arizona (the "Arizona Class members").

189. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of their products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of their products, including Arizona Class members.

43

190. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Arizona Class members of those risks.

191. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

192. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

193. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

194. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Arizona Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the Arizona Class members used their PFAS Carpet Products as intended.

195. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to Arizona Class members, those products would not have gained widespread acceptance in the marketplace, and the Arizona Class members would not have installed the PFAS Carpet Products at issue.

44

196. These and other acts by Defendant were a direct and proximate cause of damage to Arizona Class members.

## COUNT 8
### VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT
### (ARIZ. REV. STAT. §§ 44-1521 *ET SEQ.*)
### ON BEHALF OF THE ARIZONA CLASS MEMBERS

197. Plaintiffs incorporate herein the allegations contained above.

198. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Arizona (the "Arizona Class members").

199. The Arizona Consumer Fraud Act (the "Arizona CFA") provides that the "act, use or employment by any person of any deception, deceptive act or practice, fraud . . . , misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A).

200. Defendant and each Arizona Class member is a "person" within the meaning of the Arizona CFA. Ariz. Rev. Stat. § 44-1521(6).

201. PFAS Carpet Products are "merchandise" within the meaning of the Arizona CFA. Ariz. Rev. Stat. § 44-1521(5).

202. Defendant's conduct, as set forth above, occurred in the conduct of trade or commerce.

45

203. In the conduct of trade or commerce, Defendant knowingly concealed, suppressed, and omitted the material fact that PFAS Carpet Products purchased by the Arizona Class members were treated with harmful PFAS chemicals, with the intent that others rely upon the concealment, suppression, or omission.

204. In purchasing their PFAs Carpet Products, the Arizona Class members were deceived by Defendant's failure to disclose that their PFAS Carpet Products were treated with harmful PFAS chemicals, causing indoor contamination.

205. The Arizona Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

206. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

207. Defendant knew or should have known that its conduct violated the Arizona CFA.

208. Defendant owed the Arizona Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

    a.  Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Arizona Class members; and

    b.  Intentionally concealed the foregoing from the Arizona Class members.

209. Defendant's conduct proximately caused injuries to the Arizona Class members.

46

210. The Arizona Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

211. Defendant's violations present a continuing risk to the Arizona Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

212. Pursuant to the Arizona CFA, the Arizona Class members seek monetary relief against Defendant in an amount to be determined at trial. The Arizona Class members also seek punitive damages because Defendant engaged in aggravated and outrageous conduct with an evil mind.

COUNT 9
STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
ON BEHALF OF THE ARKANSAS CLASS MEMBERS

213. Plaintiffs incorporate herein the allegations contained above.

214. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Arkansas (the "Arkansas Class members").

215. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

216. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the Arkansas Class members, who might be foreseeably harmed by PFAS Carpet Products.

47

217. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a.  PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b.  PFAS contamination poses significant threats to public health, economic welfare, and the environment.

218. Defendant failed to disclose these threats to Arkansas Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

219. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Arkansas Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

220. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to people and to property.

221. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

222. At all relevant times, Arkansas Class members used their PFAS Carpet Products as intended.

223. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

224. As a direct and proximate result of Defendant's unreasonably dangerous design of PFAS Carpet Products, the Arkansas Class members have been injured by widespread and toxic PFAS contamination.

225. These and other acts by Defendant were a direct and proximate cause of damage to the Arkansas Class members.

## COUNT 10
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
### ON BEHALF OF THE ARKANSAS CLASS MEMBERS

226. Plaintiffs incorporate herein the allegations contained above.

227. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Arkansas (the "Arkansas Class members").

49

228. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its PFAS Carpet Products, including the Arkansas Class members.

229. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Arkansas Class members of those risks.

230. Any warnings that Defendant might have disseminated were rendered ineffective by their false and misleading public statements about the dangers of PFAS Carpet Products, and their widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

231. Defendant's inadequate warnings and instructions rendered PFAS Carpet Products defective and not reasonably safe.

232. Defendant's PFAS Carpet Products were defective by virtue of their inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

233. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Arkansas Class members, who would have heeded legally adequate warnings

50

about the dangers of PFAS Carpet Products. At all relevant times, the Arkansas Class members used their PFAS Carpet Products as intended.

234. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to the Arkansas Class members, those products would not have gained widespread acceptance in the marketplace, and the Arkansas Class members would not have installed the PFAS Carpet Products at issue.

235. These and other acts by Defendant were a direct and proximate cause of damage to the Arkansas Class members.

<div align="center">

**COUNT 11**
**VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT**
**(ARK. CODE ANN. §§ 4-88-101 *ET SEQ.*)**
**ON BEHALF OF THE ARKANSAS CLASS MEMBERS**

</div>

236. Plaintiffs incorporate herein the allegations contained above.

237. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Arkansas (the "Arkansas Class members").

238. The Arkansas Deceptive Trade Practices Act (the "Arkansas DTPA") provides that the "act, use or employment by a person of any deception, fraud, or false pretense… concealment, suppression, or mission of any material fact with intent that other rely upon the concealment, suppression, or omission" when utilized "in connection with the sale or advertisement of any goods" shall be an unlawful practice. Ark. Code Ann. § 4-88-108(a).

239. Defendant and each Arkansas Class member are considered a "person" within the meaning of the Arkansas DTPA.

<div align="center">51</div>

240. PFAS Carpet Products are "merchandise" within the meaning of the Arkansas DTPA.

241. Defendant's conduct, as set forth above, occurred in the conduct of trade or commerce.

242. In the conduct of trade or commerce, Defendant knowingly concealed, suppressed, and omitted the material fact that PFAS Carpet Products purchased by the Arkansas Class members were treated with harmful PFAS chemicals, with the intent that others rely upon the concealment, suppression, or omission.

243. In purchasing their PFAs Carpet Products, the Arkansas Class members were deceived by Defendant's failure to disclose that its PFAS Carpet Products were treated with harmful PFASs, causing indoor contamination.

244. The Arkansas Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

245. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

246. Defendant knew or should have known that its conduct violated the Arkansas DTPA.

247. Defendant owed the Arkansas Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

52

a. Possessed superior knowledge that its PFAS Carpet Products were harmful and were purchased by the Arkansas Class members; and

b. Intentionally concealed the foregoing from the Arkansas Class members.

248. Defendant's conduct proximately caused injuries to the Arkansas Class members.

249. The Arkansas Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

250. Defendant's violations present a continuing risk to the Arkansas Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

251. Pursuant to the Arkansas DTPA, the Arkansas Class members seek monetary relief against each Defendant in an amount to be determined at trial.

## COUNT 12
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE CALIFORNIA CLASS MEMBERS

252. Plaintiffs incorporate herein the allegations contained above.

253. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in California (the "California Class members").

254. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

255. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and

53

it owed that duty to all people, including the California Class members, who might be foreseeably harmed by PFAS Carpet Products.

256. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

257. Defendant failed to disclose these threats to the California Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

258. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the California Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

259. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable,

feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to people and to property.

260. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

261. At all relevant times, the California Class members used their PFAS Carpet Products as intended.

262. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

263. As a direct and proximate result of Defendant's unreasonably dangerous design of PFAS Carpet Products, California Class members have been injured by widespread and toxic PFAS contamination.

264. These and other acts by Defendant were a direct and proximate cause of damage to the California Class members.

## COUNT 13
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
### ON BEHALF OF THE CALIFORNIA CLASS MEMBERS

265. Plaintiffs incorporate herein the allegations contained above.

266. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in California (the "California Class members").

267. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the California Class members.

268. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the California Class members of those risks.

269. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

270. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

56

271. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached its end users without substantial change in their condition.

272. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the California Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the California Class members used their PFAS Carpet Products as intended.

273. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to the California Class members, those products would not have gained widespread acceptance in the marketplace, and the California Class members would not have installed the PFAs Carpet Products at issue.

274. These and other acts by Defendant were a direct and proximate cause of damage to the California Class members.

**COUNT 14**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*)**
**ON BEHALF OF THE CALIFORNIA CLASS MEMBERS**

275. Plaintiffs incorporate herein the allegations contained above.

276. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in California (the "California Class members").

277. California's Unfair Competition Law (the "California UCL") proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice

57

and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code §§ 17201 *et seq.*

278. The California Class members and Defendant are "persons" within the meaning of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

279. In purchasing their PFAs Carpet Products, the California Class members were deceived by Defendant's failure to disclose that its PFAs Carpet Products contained harmful PFAS chemicals.

280. The California Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

281. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

282. Defendant knew or should have known that its conduct violated the California UCL.

283.  Defendant owed the California Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

    a.  Possessed superior knowledge that its products were infused with PFASs that were applied to the carpeting purchased by California Class members; and

    b.  Intentionally concealed the foregoing from the California Class members.

284. Defendant's conduct proximately caused injuries to California Class members.

285. The California Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

286. Defendant's violations present a continuing risk to the California Class members as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

287. The California Class members request that this Court enter such orders or judgments as may be necessary to restore to the California Class members any money Defendant's acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof. Code § 3345; and for such other relief as may be appropriate.

## COUNT 15
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE COLORADO CLASS MEMBERS

288. Plaintiffs incorporate herein the allegations contained above.

289. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Colorado (the "Colorado Class members").

290. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

291. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it

59

owed that duty to all people, including the Colorado Class members, who might be foreseeably harmed by PFAS Carpet Products.

292. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

293. Defendant failed to disclose these threats to the Colorado Class members and the public generally, but instead downplayed and misrepresented the dangers posed by their PFAS Carpet Products.

294. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Colorado Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

295. At all relevant times, the Colorado Class members used their PFAS Carpet Products as intended.

296. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of their PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its

60

PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to people and to property.

297. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

298. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

299. As a direct and proximate result of Defendant's unreasonably dangerous design of PFAS Carpet Products, Colorado Class members have been injured by widespread and toxic PFAS contamination.

300. These and other acts by Defendant were a direct and proximate cause of damage to the Colorado Class members.

## COUNT 16
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
### ON BEHALF OF THE COLORADO CLASS MEMBERS

301. Plaintiffs incorporate herein the allegations contained above.

302. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Colorado (the "Colorado Class members").

303. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including Colorado Class members.

304. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and Colorado Class members of those risks.

305. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

306. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

62

307. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

308. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Colorado Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the Colorado Class members used their PFAS Carpet Products as intended.

309. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to the Colorado Class members, those products would not have gained widespread acceptance in the marketplace, and the Colorado Class members would not have installed the PFAS Carpet Products at issue.

310. These and other acts by Defendant were a direct and proximate cause of damage to the Colorado Class members.

## COUNT 17
### VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT
### (COLO. REV. STAT. §§ 6-1-101 *ET SEQ.*)
### ON BEHALF OF THE COLORADO CLASS MEMBERS

311. Plaintiffs incorporate herein the allegations contained above.

312. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Colorado (the "Colorado Class members").

313. The Colorado Consumer Protection Act (the "Colorado CPA") prohibits deceptive practices in the course of a person's business, including, but not limited to,

63

"fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." Colo. Rev. Stat. § 6-1-105.

314. Plaintiffs, Colorado Class members, and Defendant are "persons" within the meaning of under Colo. Rev. Stat. § 6-1-102(6).

315. The Colorado Class members are "consumers" for purposes of Colo. Rev. Stat. § 6-1-113(1)(a).

316. Defendant's conduct, as set forth above, occurred in the conduct of trade or commerce.

317. In purchasing their PFAS Carpet Products, the Colorado Class members were deceived by Defendant's failure to disclose the material information that its PFAS Carpet Products were treated with harmful PFAS chemicals.

318. The Colorado Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

319. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

320. Defendant knew or should have known its conduct violated the Colorado CPA.

321. Defendant owed the Colorado Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

64

a. Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Colorado Class members; and

b. Intentionally concealed the foregoing from the Colorado Class members.

322. Defendant's conduct proximately caused injuries to the Colorado Class members.

323. Pursuant to Colo. Rev. Stat. § 6-1-113, the Colorado Class members seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500.

324. The Colorado Class members also seek attorneys' fees and any other just and proper remedy under the Colorado CPA.

### COUNT 18
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE CONNECTICUT CLASS MEMBERS

325. Plaintiffs incorporate herein the allegations contained above.

326. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Connecticut (the "Connecticut Class members").

327. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

328. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it

65

owed that duty to all persons, including the Connecticut Class members, who might be foreseeably harmed by PFAS Carpet Products.

329. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

330. Defendant failed to disclose these threats to the Connecticut Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

331. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Connecticut Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

332. At all relevant times, the Connecticut Class members used their PFAS Carpet Products as intended.

333. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its

66

PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to persons and to property.

334. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

335. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

336. As a direct and proximate result of Defendant's unreasonably dangerous manufacture and design of PFAS Carpet Products, the Connecticut Class members have been injured by widespread and toxic PFAS contamination.

337. These and other acts by Defendant were a direct and proximate cause of damage to the Connecticut Class members.

67

## COUNT 19
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
### ON BEHALF OF THE CONNECTICUT CLASS MEMBERS

338. Plaintiffs incorporate herein the allegations contained above.

339. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Connecticut (the "Connecticut Class members").

340. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the Connecticut Class members.

341. Despite Defendant's superior knowledge of the risks posed by the PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Connecticut Class members of those risks.

342. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

343. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

68

344. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached its end users without substantial change in their condition.

345. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Connecticut Class members, who would have heeded legally adequate warnings about the dangers of the PFAS Carpet Products. At all relevant times, the Connecticut Class members used their PFAS Carpet Products as intended.

346. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to the Connecticut Class members, those products would not have gained widespread acceptance in the marketplace, and the Connecticut Class members would not have installed the PFAS Carpet Products at issue.

347. These and other acts by Defendant were a direct and proximate cause of damage to the Connecticut Class members.

<div align="center">

**COUNT 20**
**NEGLIGENCE (DESIGN DEFECT)**
**ON BEHALF OF THE DELAWARE CLASS MEMBERS**

</div>

348. Plaintiffs incorporate herein the allegations contained above.

349. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Delaware (the "Delaware Class members").

350. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

<div align="center">69</div>

351. As manufacturers and sellers of the PFAS Carpet Products, Defendant had a duty not to negligently place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all people, including the Delaware Class members, who might be foreseeably harmed by PFAS Carpet Products.

352. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a.  PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b.  PFAS contamination poses significant threats to public health, economic welfare, and the environment.

353. Defendant failed to disclose these threats to the Delaware Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

354. At all relevant times, PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Delaware Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

355. At all relevant times, Delaware Class members used their PFAS Carpet Products as intended.

356. Defendant knew of these risks and nevertheless negligently failed to use reasonable care in the design of their PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed their PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered their products defective, not reasonably safe, and unreasonably dangerous to people and to property.

357. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

358. Defendant's PFAS Carpet Products were defectively and negligently designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

359. As a direct and proximate result of Defendant's negligent design of unreasonably dangerous PFAS Carpet Products, the Delaware Class members have been injured by widespread and toxic PFAS contamination.

360. These and other acts by Defendant were a direct and proximate cause of damages to the Delaware Class members.

## COUNT 21
### NEGLIGENCE (FAILURE TO WARN)
### ON BEHALF OF THE DELAWARE CLASS MEMBERS

361. Plaintiffs incorporate herein the allegations contained above.

362. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Delaware (the "Delaware Class members").

363. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew or should have known about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the Delaware Class members.

364. Despite Defendant's superior knowledge of the risks posed by the PFAS Carpet Products, Defendant negligently failed to warn consumers, the public, and the Delaware Class members of those risks.

365. Any warnings that Defendant might have disseminated were rendered ineffective by their false and misleading public statements about the dangers of PFAS Carpet Products, and their widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

366. Defendant's inadequate and negligent warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

72

367. Defendant's PFAS Carpet Products were defective by virtue of its negligently inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

368. Defendant's negligent failure to warn proximately caused reasonably foreseeable injuries to the Delaware Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the Delaware Class members used their PFAS Carpet Products as intended.

369. Had Defendant provided adequate warnings regarding the dangers of the PFAS Carpet Products to the Delaware Class members, those products would not have gained widespread acceptance in the marketplace, and the Delaware Class members would not have installed the PFAS Carpet Products at issue.

370. These and other acts by Defendant were a direct and proximate cause of damage to the Delaware Class members.

<div align="center">

**COUNT 22**
**VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT**
**(DEL. CODE TIT. 6, §§ 2511 *ET SEQ.*)**
**ON BEHALF OF THE DELAWARE CLASS MEMBERS**

</div>

371. Plaintiffs incorporate herein the allegations contained above.

372. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Delaware (the "Delaware Class members").

373. The Delaware Consumer Fraud Act (the "Delaware CFA") prohibits the "act, use, or employment by any person of any deception, fraud, false pretense, false promise,

73

misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease or advertisement of any merchandise, whether or nor any person has in fact been misled, deceived, or damaged thereby." Del. Code Tit. 6, § 2513(a).

374. The Delaware Class members and Defendant are "persons" within the meaning of Del. Code Tit. 6, § 2511(7).

375. Defendant's actions, as set forth above, occurred in the conduct of trade or commerce.

376. In the conduct of trade or commerce, Defendant knowingly concealed, suppressed, and omitted the material facts that the PFAS Carpet Products purchased by the Delaware Class members were treated with harmful PFAS chemicals, with the intent that others rely upon the concealment, suppression, or omission.

377. In purchasing their PFAS Carpet Products, the Delaware Class members were deceived by Defendant's failure to disclose that their PFAS Carpet Products were treated with harmful PFAS chemicals.

378. The Delaware Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

379. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

380. Defendant knew or should have known that its conduct violated the Delaware CFA.

381. Defendant owed the Delaware Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

    a. Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Delaware Class members; and

    b. Intentionally concealed the foregoing from the Delaware Class members.

382. Mohawk's conduct proximately caused injuries to the Delaware Class members.

383. The Delaware Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

384. Defendant's violations present a continuing risk to the Delaware Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

385. The Delaware Class members seek damages under the Delaware CFA for injury resulting from the direct and natural consequences of Defendant's unlawful conduct. The Delaware Class members also seek attorneys' fees and any other just and proper relief available under the Delaware CFA.

386. Defendant engaged in gross, oppressive, or aggravated conduct justifying the imposition of punitive damages.

75

## COUNT 23
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE FLORIDA CLASS MEMBERS

387. Plaintiffs incorporate herein the allegations contained above.

388. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Florida (the "Florida Class members").

389. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

390. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all people, including the Florida Class members, who might be foreseeably harmed by PFAS Carpet Products.

391. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

392. Defendant failed to disclose these threats to the Florida Class members and the public generally but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

393. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Florida Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

394. At all relevant times, the Florida Class members used its PFAS Carpet Products as intended.

395. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to people and to property.

396. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

397. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

77

398. As a direct and proximate result of Defendant's unreasonably dangerous design of PFAS Carpet Products, the Florida Class members have been injured by widespread and toxic PFAS contamination.

399. These and other acts by Defendant were a direct and proximate cause of damage to the Florida Class members.

## COUNT 24
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
### ON BEHALF OF THE FLORIDA CLASS MEMBERS

400. Plaintiffs incorporate herein the allegations contained above.

401. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Florida (the "Florida Class members").

402. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the Florida Class members.

403. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Florida Class members of those risks.

404. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS

Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

405. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

406. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

407. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Florida Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the Florida Class members used their PFAS Carpet Products as intended.

408. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to the Florida Class members, those products would not have gained widespread acceptance in the marketplace, and the Florida Class members would not have installed the PFAS Carpet Products at issue.

409. These and other acts by Defendant were a direct and proximate cause of damage to the Florida Class members.

**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
(FLA. STAT. ANN. §§ 501.201 *ET SEQ.*)
ON BEHALF OF THE FLORIDA CLASS MEMBERS**

410. Plaintiffs incorporate herein the allegations contained above.

411. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Florida (the "Florida Class members").

412. The Florida Deceptive and Unfair Trade Practices Act (the "Florida DUTPA") provides that "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. Ann. § 501.204(1).

413. Defendant's conduct, as set forth above, occurred in the conduct of "trade or commerce." Fla. Stat. Ann. § 501.203.

414. In the conduct of trade or commerce, Defendant knowingly concealed, suppressed, and omitted the material fact that the PFAS Carpet Products purchased by the Florida Class members were treated with harmful PFAS chemicals, with the intent that they rely upon the concealment, suppression, or omission.

415. In purchasing their PFAS Carpet Products, the Florida Class members were deceived by Defendant's failure to disclose that their PFAS Carpet Products were treated with harmful PFAS chemicals, causing indoor contamination.

416. The Florida Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

80

417. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

418. Defendant knew or should have known that its conduct violated the Florida DUTPA.

419. Defendant owed the Florida Class members a duty to disclose the truth about the PFAS Carpet Products because Defendant:

    a.  Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Florida Class members; and

    b.  Intentionally concealed the foregoing from the Florida Class members.

420. Defendant's conduct proximately caused injuries to the Florida Class members.

421. The Florida Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

422. Defendant's violations present a continuing risk to the Florida Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

423. Pursuant to the Florida DUTPA, the Florida Class members seek monetary relief against Defendant in an amount to be determined at trial.

## COUNT 26
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE GEORGIA CLASS MEMBERS

424. Plaintiffs incorporate herein the allegations contained above.

425. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Georgia (the "Georgia Class members").

426. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

427. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and they owed that duty to all persons, including the Georgia Class members, who might be foreseeably harmed by PFAS Carpet Products.

428. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

429. Defendant failed to disclose these threats to the Georgia Class members and the public generally, but instead downplayed and misrepresented the dangers posed by their PFAS Carpet Products.

82

430. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Georgia Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

431. At all relevant times, the Georgia Class members used their PFAS Carpet Products as intended.

432. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFAS. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to people and to property.

433. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

434. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

83

435. As a direct and proximate result of Defendant's unreasonably dangerous design of PFAS Carpet Products, the Georgia Class members have been injured by widespread and toxic PFAS contamination.

436. These and other acts by Defendant were a direct and proximate cause of damage to Georgia Class members.

## COUNT 27
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
### ON BEHALF OF THE GEORGIA CLASS MEMBERS

437. Plaintiffs incorporate herein the allegations contained above.

438. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Georgia (the "Georgia Class members").

439. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the Georgia Class members.

440. Despite Defendant's superior knowledge of the risks posed by the PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Georgia Class members of those risks.

441. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS

Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

442. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

443. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

444. Defendant's failure to warn proximately caused reasonably foreseeable injuries to Georgia Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the Georgia Class members used their PFAS Carpet Products as intended.

445. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to Georgia Class members, those products would not have gained widespread acceptance in the marketplace, and the Georgia Class members would not have installed the PFAS Carpet Products at issue.

446. These and other acts by Defendant were a direct and proximate cause of damages to the Georgia Class members.

85

## COUNT 28
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE HAWAII CLASS MEMBERS

447. Plaintiffs incorporate herein the allegations contained above.

448. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Hawaii (the "Hawaii Class members").

449. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

450. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all people, including the Hawaii Class members, who might be foreseeably harmed by PFAS Carpet Products.

451. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

452. Defendant failed to disclose these threats to the Hawaii Class members and the public generally, but instead downplayed and misrepresented the dangers posed by their PFAS Carpet Products.

86

453. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Hawaii Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

454. At all relevant times, Hawaii Class members used their PFAS Carpet Products as intended.

455. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to persons and to property.

456. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

457. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

87

458. As a direct and proximate result of Defendant's unreasonably dangerous design of PFAS Carpet Products, Hawaii Class members have been injured by widespread and toxic PFAS contamination.

459. These and other acts by Defendant were a direct and proximate cause of damages to Hawaii Class members.

## COUNT 29
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN) ON BEHALF OF THE HAWAII CLASS MEMBERS

460. Plaintiffs incorporate herein the allegations contained above.

461. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Hawaii (the "Hawaii Class members").

462. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the Hawaii Class members.

463. Despite Defendant's superior knowledge of the risks posed by the PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Hawaii Class members of those risks.

464. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS

88

Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

465. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

466. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

467. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Hawaii Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the Hawaii Class members used their PFAS Carpet Products as intended.

468. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to Hawaii Class members, those products would not have gained widespread acceptance in the marketplace, and the Hawaii Class members would not have installed the PFAS Carpet Products at issue.

469. These and other acts by Defendant were a direct and proximate cause of damage to the Hawaii Class members.

89

## COUNT 30
## VIOLATION OF THE HAWAII UNIFORM DECEPTIVE TRADE PRACTICE ACT
## (HAW. REV. STAT. ANN. §§ 481A-1 *ET SEQ.*)
## ON BEHALF OF THE HAWAII CLASS MEMBERS

470. Plaintiffs incorporate herein the allegations contained above.

471. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Hawaii (the "Hawaii Class members").

472. The Hawaii Unfair or Deceptive Acts or Practices Act (the "Hawaii UDAP") declares "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" as unlawful practices. Haw. Rev. Stat. Ann. § 480-2(a).

473. Defendant was engaged in "trade" and "commerce" within the meaning of the Hawaii UDAP when it made and sold its PFAS Carpet Products to Hawaii Class members. Haw. Rev. Stat. Ann. § 480-2(a).

474. In the conduct of trade or commerce, Defendant knowingly concealed, suppressed, and omitted the material fact that PFAS Carpet Products purchased by the Hawaii Class members were treated with PFAS Carpet Products, with the intent that others rely upon the concealment, suppression, or omission.

475. In purchasing their PFAS Carpet Products, the Hawaii Class members were deceived by Defendant's failure to disclose that their PFAS Carpet Products were treated with harmful PFAS chemicals.

476. The Hawaii Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

477. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

478. Defendant knew or should have known that its conduct violated the Hawaii UDAP.

479. Defendant owed the Hawaii Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

    a. Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Hawaii Class members; and

    b. Intentionally concealed the foregoing from the Hawaii Class members.

480. Defendant's conduct proximately caused injuries to the Hawaii Class members.

481. The Hawaii Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

482. Defendant's violations present a continuing risk to the Hawaii Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

483. Pursuant to Haw. Rev. Stat. Ann. § 480-2(a), the Hawaii Class members seek monetary relief against Defendant and attorneys' fees and any other just and proper relief available.

91

## COUNT 31
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE IDAHO CLASS MEMBERS

484. Plaintiffs incorporate herein the allegations contained above.

485. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Idaho (the "Idaho Class members").

486. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

487. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the Idaho Class members, who might be foreseeably harmed by PFAS Carpet Products.

488. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

489. Defendant failed to disclose these threats to the Idaho Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

92

490. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Idaho Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

491. At all relevant times, the Idaho Class members used their PFAS Carpet Products as intended.

492. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered their products defective, not reasonably safe, and unreasonably dangerous to people and to property.

493. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

494. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

93

495. As a direct and proximate result of Defendant's unreasonably dangerous design of PFAS Carpet Products, the Idaho Class members have been injured by widespread and toxic PFAS contamination.

496. These and other acts by Defendant were a direct and proximate cause of damage to the Idaho Class members.

## COUNT 32
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
### ON BEHALF OF THE IDAHO CLASS MEMBERS

497. Plaintiffs incorporate herein the allegations contained above.

498. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Idaho (the "Idaho Class members").

499. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including Idaho Class members.

500. Despite Mohawk's superior knowledge of the risks posed by PFAS Carpet Products, Mohawk failed to warn consumers, the public, and the Idaho Class members of those risks.

501. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of the PFAS

Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

502. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

503. Defendant's PFAS Carpet Products were defective by virtue of their inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

504. Defendant's failure to warn proximately caused reasonably foreseeable injuries to Idaho Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the Idaho Class members used their PFAS Carpet Products as intended.

505. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to the Idaho Class members, those products would not have gained widespread acceptance in the marketplace, and the Idaho Class members would not have installed the carpets at issue.

506. These and other acts by Defendant were a direct and proximate cause of damage to Idaho Class members.

95

## COUNT 33

### VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT
### (IDAHO CODE ANN. §§ 48-601 *ET SEQ.*)
### ON BEHALF OF THE IDAHO CLASS MEMBERS

507. Plaintiffs incorporate herein the allegations contained above.

508. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Idaho (the "Idaho Class members").

509. The Idaho Consumer Protection Act ("Idaho CPA") declares that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. Idaho Code Ann. § 48-603. The Idaho Administrative Code on false and misleading conduct in general further explains what unfair or deceptive acts are: "[U]nfair and deceptive act or practice for a seller to make any claim or representation concerning goods or services which… has the capacity, tendency, or effect of deceiving or misleading a consumer acting reasonably under the circumstances." Idaho Admin. Code r. 04.02.01.030. Further, the Idaho Administrative Code states that an "omission of a material or relevant fact shall be treated with the same effect as a false, misleading, or deceptive claim or representation, when such omission, on the basis of what has been stated or implied, would have the capacity, tendency, or effect of deceiving or misleading a consumer acting reasonably under the circumstances." Idaho Admin. Code r. 04.02.01.030.

510. The Idaho Class members are "consumers" within the meaning of the Idaho CPA.

96

511. Defendant was engaged in trade or commerce when it sold its PFAS Carpet Products to the Idaho Class members.

512. In the conduct of trade or commerce, Defendant knowingly concealed, suppressed, and omitted the material fact that PFAS Carpet Products purchased by the Idaho Class members were treated with harmful PFAS chemicals, with the intent that others rely upon the concealment, suppression, or omission.

513. In purchasing their PFAS Carpet Products, the Idaho Class members were deceived by Defendant's failure to disclose that its PFAS Carpet Products were treated with harmful PFAS chemicals.

514. The Idaho Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

515. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

516. Defendant knew or should have known that its conduct violated the Idaho CPA.

517. Defendant owed the Idaho Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

  a. Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Idaho Class members; and

  b. Intentionally concealed the foregoing from the Idaho Class members.

518. Defendant's conduct proximately caused injuries to the Idaho Class members.

97

519. The Idaho Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

520. Defendant's violations present a continuing risk to the Idaho Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

521. Pursuant to the Idaho CPA, Idaho Class members seek monetary relief against Defendant and seek attorneys' fees and any other just and proper relief available.

## COUNT 34
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE ILLINOIS CLASS MEMBERS

522. Plaintiffs incorporate herein the allegations contained above.

523. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Illinois (the "Illinois Class members").

524. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

525. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the Illinois Class members, who might be foreseeably harmed by PFAS Carpet Products.

526. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner.

b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

527. Defendant failed to disclose these threats to Illinois Class members and the public generally, but instead downplayed and misrepresented the dangers posed by their PFAS Carpet Products.

528. At all relevant times, PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Illinois Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

529. At all relevant times, the Illinois Class members used their PFAS Carpet Products as intended.

530. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered their products defective, not reasonably safe, and unreasonably dangerous to people and to property.

99

531. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

532. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

533. As a direct and proximate result of Defendant's unreasonably dangerous design of PFAS Carpet Products, the Illinois Class members have been injured by widespread and toxic PFAS contamination.

534. These and other acts by Defendant were a direct and proximate cause of damage to the Illinois Class members.

## COUNT 35
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN) ON BEHALF OF THE ILLINOIS CLASS MEMBERS

535. Plaintiffs incorporate herein the allegations contained above.

536. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Illinois (the "Illinois Class members").

537. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended

100

to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the Illinois Class members.

538. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Illinois Class members of those risks.

539. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

540. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

541. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS products reached their end users without substantial change in their condition.

542. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Illinois Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the Illinois Class members used their PFAS Carpet Products as intended.

543. Had Defendant provided adequate warnings regarding the dangers of the PFAS Carpet Products to the Illinois Class members, those products would not have gained

widespread acceptance in the marketplace, and the Illinois Class members would not have installed the PFAs Carpet Products at issue.

544. These and other acts by Defendant were a direct and proximate cause of damage to Illinois Class members.

<div align="center">

**COUNT 36**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILL. COMP. STAT. ANN. §§ 505/1 *ET SEQ.*)**
**ON BEHALF OF THE ILLINOIS CLASS MEMBERS**

</div>

545. Plaintiffs incorporate herein the allegations contained above.

546. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Illinois (the "Illinois Class members").

547. The Illinois Consumer Fraud and Deceptive Business Practices Act (the "Illinois CFA") declares several specific actions to be unlawful, including "any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact."

548. The Illinois Class members are "consumers" within the meaning of the Illinois CFA. 815 Ill. Comp. Stat. Ann. § 505/1(e).

549. Defendant was engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. Ann. § 505/1(f) when it sold its PFAS Carpet Products to Illinois Class members.

<div align="center">102</div>

550. In the conduct of trade or commerce, Defendant knowingly concealed, suppressed, and omitted the material fact that PFAs Carpet Products purchased by the Illinois Class members were treated with harmful PFAS chemicals, with the intent that others rely upon the concealment, suppression, or omission.

551. In purchasing their PFAS Carpet Products, the Illinois Class members were deceived by Defendant's failure to disclose that its PFAS Carpet Products were treated with harmful PFAS chemicals.

552. The Illinois Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

553. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

554. Defendant knew or should have known that its conduct violated the Illinois CFA.

555. Defendant owed the Illinois Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

   a. Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Illinois Class members; and

   b. Intentionally concealed the foregoing from the Illinois Class members.

556. Defendant's conduct proximately caused injuries to the Illinois Class members.

103

557. The Illinois Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

558. Defendant's violations present a continuing risk to the Illinois Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

559. Pursuant to 815 Ill. Comp. Stat. Ann. § 505/10a(a), the Illinois Class members seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each Illinois Class member.

560. The Illinois Class members seek attorneys' fees and any other just and proper relief available under 815 Ill. Comp. Stat. Ann. § 505/10a(c).

## COUNT 37
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE INDIANA CLASS MEMBERS

561. Plaintiffs incorporate herein the allegations contained above.

562. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Indiana (the "Indiana Class members").

563. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

564. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it

104

owed that duty to all people, including the Indiana Class members, who might be foreseeably harmed by PFAS Carpet Products.

565. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a.  PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b.  PFAS contamination poses significant threats to public health, economic welfare, and the environment.

566. Defendant failed to disclose these threats to the Indiana Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

567. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Indiana Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

568. The Indiana Class members used their PFAS Carpet Products as intended.

569. Defendant knew of these risks yet failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental

dangers posed by PFASs. Defendant's failure to adopt reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to persons and property.

570. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFAS chemicals in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

571. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

572. As a direct and proximate result of Defendant's unreasonably dangerous design of the PFAS Carpet Products, the Indiana Class members have been injured by widespread and toxic PFAS contamination.

573. These and other acts by Defendant were a direct and proximate cause of damage to the Indiana Class members.

COUNT 38
STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
ON BEHALF OF THE INDIANA CLASS MEMBERS

574. Plaintiffs incorporate herein the allegations contained above.

575. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Indiana (the "Indiana Class members").

106

576. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the Indiana Class members.

577. Despite Defendant's superior knowledge of the risks posed by the PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Indiana Class members of those risks.

578. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

579. Defendant's inadequate warnings and instructions rendered PFAS Carpet Products defective and not reasonably safe.

580. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

581. Defendant's failure to warn proximately caused reasonably foreseeable injuries to Indiana Class members, who would have heeded legally adequate warnings about the

107

dangers of PFAS Carpet Products. At all relevant times, the Indiana Class members used their PFAS Carpet Products as intended.

582. Had Defendant provided adequate warnings regarding the dangers of the PFAS Carpet Products to the Indiana Class members, those products would not have gained widespread acceptance in the marketplace, and the Indiana Class members would not have installed the PFAS Carpet Products at issue.

583. These and other acts by Defendant were a direct and proximate cause of damage to the Indiana Class members.

## COUNT 39
### VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
### (IND. CODE ANN. §§ 24-5-0.5-0.1, *ET SEQ.*)
### ON BEHALF OF THE INDIANA CLASS MEMBERS

584. Plaintiffs incorporate herein the allegations contained above.

585. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Indiana (the "Indiana Class members").

586. The Indiana Deceptive Consumer Sales Act (the "Indiana DCSA") prohibits any supplier from committing an "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction… whether it occurs before, during, or after the transaction." Further, the Indiana DCSA lists multiple examples of deceptive acts, with one being that such "subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not." Ind. Code Ann. § 24-5-0.5-3.

108

587. Defendant is a "supplier" under Ind. Code Ann. § 24-5-0.5-2.

588. In purchasing their carpets, the Indiana Class members were deceived by Defendant's failure to disclose that its PFAS Carpet Products were treated with PFAS chemicals.

589. The Indiana Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

590. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

591. Defendant knew or should have known that its conduct violated the Indiana DCSA.

592. Defendant owed the Indiana Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

   a.  Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Indiana Class members; and

   b.  Intentionally concealed the foregoing from the Indiana Class members.

593. Defendant's conduct proximately caused injuries to the Indiana Class members.

594. The Indiana Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

109

595. Defendant's violations present a continuing risk to the Indiana Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

596. Pursuant to Ind. Code Ann. § 24-5-0.5-4, the Indiana Class members seek actual damages and statutory damages up to three times the amount of actual damages, or $1,000, whichever is greater, awarded as a result of Defendant's willful deceptive acts.

597. The Indiana Class members also seek reasonable attorneys' fees as provided in the Ind. Code Ann. § 24-5-0.5-4.

<div align="center">

**COUNT 40**
**STRICT PRODUCTS LIABILITY (DESIGN DEFECT)**
**ON BEHALF OF THE IOWA CLASS MEMBERS**

</div>

598. Plaintiffs incorporate herein the allegations contained above.

599. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Iowa (the "Iowa Class members").

600. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

601. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all people, including the Iowa Class members, who might be foreseeably harmed by PFAS Carpet Products.

602. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

<div align="center">110</div>

a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

603. Defendant failed to disclose these threats to the Iowa Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

604. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Iowa Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

605. At all relevant times, the Iowa Class members used their PFAS Carpet Products as intended.

606. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to persons and to property.

111

607. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

608. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

609. As a direct and proximate result of Defendant's unreasonably dangerous design of PFAS Carpet Products, the Iowa Class members have been injured by widespread and toxic PFAS contamination.

610. These and other acts by Defendant were a direct and proximate cause of damage to Iowa Class members.

## COUNT 41
### NEGLIGENCE (FAILURE TO WARN)
### ON BEHALF OF THE IOWA CLASS MEMBERS

611. Plaintiffs incorporate herein the allegations contained above.

612. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Iowa (the "Iowa Class members").

613. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third

parties who might be foreseeably harmed by the ordinary use and misuse of its products, including Iowa Class members.

614. Despite Defendant's superior knowledge of the risks posed by the PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Iowa Class members of those risks.

615. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of the PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs. Thus, Defendant breached its duty of care owed to consumers, including the Iowa Class members.

616. Defendant's inadequate' warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

617. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

618. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Iowa Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the Iowa Class members used their PFAS Carpet Products as intended.

113

619. Had Defendant provided adequate warnings regarding the dangers of PFASs to the Iowa Class members, those products would not have gained widespread acceptance in the marketplace, and the Iowa Class members would not have installed the PFAS Carpet Products at issue.

620. These and other acts by Defendant were a direct and proximate cause of damage to Iowa Class members.

### COUNT 42
### VIOLATION OF THE IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT (IOWA CODE ANN. §§ 714H.1 *ET SEQ.*)
### ON BEHALF OF THE IOWA CLASS MEMBERS

621. Plaintiffs incorporate herein the allegations contained above.

622. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Iowa (the "Iowa Class members").

623. The Iowa Private Right of Action for Consumer Frauds Act ("Iowa CFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression or omission in connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code Ann. § 714H.3.

624. Defendant and each Iowa Class member are considered a "person" under Iowa Code Ann. § 714H.2(7).

114

625. The Iowa Class members are "consumers" as defined by Iowa Code Ann. § 714H.2(3).

626. In purchasing their PFAS Carpet Products, the Iowa Class members were deceived by Defendant's failure to disclose that their PFAS Carpet Products were treated with harmful PFAS chemicals.

627. The Iowa Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

628. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

629. Defendant knew or should have known that its conduct violated the Iowa CFA.

630. Defendant owed the Iowa Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

    a. Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Iowa Class members; and

    b. Intentionally concealed the foregoing from the Iowa Class members.

631. Defendant's conduct proximately caused injuries to the Iowa Class members.

632. The Iowa Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

115

633. Defendant's violations present a continuing risk to the Iowa Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

634. Pursuant to Iowa Code Ann. § 714H.5, the Iowa Class members seek actual damages, and statutory damages up to three times the amount of actual damages awarded as a result of Defendant's willful and wanton disregard for the rights of others, and attorneys' fees.

## COUNT 43
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE KANSAS CLASS MEMBERS

635. Plaintiffs incorporate herein the allegations contained above.

636. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Kansas (the "Kansas Class members").

637. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

638. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the Kansas Class members, who might be foreseeably harmed by the PFAS Carpet Products.

639. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

116

a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner.

b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

640. Defendant failed to disclose these threats to the Kansas Class members and the public generally, but instead downplayed and misrepresented the posed by its PFAS Carpet products.

641. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Kansas Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

642. At all relevant times, Kansas Class members used their PFAS Carpet Products as intended.

643. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to persons and to property.

117

644. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

645. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

646. As a direct and proximate result of Defendant's unreasonably dangerous design of the PFAS Carpet Products, the Kansas Class members have been injured by widespread and toxic PFAS contamination.

647. These and other acts by Defendant were a direct and proximate cause of damage to Kansas Class members.

COUNT 44
STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
ON BEHALF OF THE KANSAS CLASS MEMBERS

648. Plaintiffs incorporate herein the allegations contained above.

649. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Kansas (the "Kansas Class members").

650. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended

118

to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the Kansas Class members.

651. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Kansas Class members of those risks.

652. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

653. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

654. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

655. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Kansas Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the Kansas Class members used their PFAS Carpet Products as intended.

656. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to the Kansas Class members, those products would not have gained

119

widespread acceptance in the marketplace, and the Kansas Class members would not have installed the PFAS Carpet Products at issue.

657. These and other acts by Defendant were a direct and proximate cause of damage to Kansas Class members.

## COUNT 45
### VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT
### (KAN. STAT. ANN. §§ 50-623 *ET SEQ.*)
### ON BEHALF OF THE KANSAS CLASS MEMBERS

658. Plaintiffs incorporate herein the allegations contained above.

659. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Kansas (the "Kansas Class members").

660. The Kansas Consumer Protection Act ("Kansas CPA") provides that a person may not engage in any deceptive act or practice in connection with a consumer transaction, including "the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact," and also any representations made knowingly or with reason to know that the goods are of "particular standard, quality, grade, style, or model, if they are of another which differs materially from the representation." Kan. Stat. Ann. § 50-626.

661. Defendant and the Kansas Class members are "persons" within the meaning of Kan. Stat. Ann. § 50-624.

662. Defendant and the Kansas Class members are all engaged in a "consumer transaction" within the meaning of Kan. Stat. Ann. § 50-624.

120

663. In purchasing their PFAS Carpet Products, the Kansas Class members were deceived by Defendant's failure to disclose that their PFAS Carpet Products were treated with harmful PFAS chemicals.

664. The Kansas Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

665. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

666. Defendant knew or should have known that its conduct violated the Kansas CPA.

667. Defendant owed the Kansas Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

    a.  Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Kansas Class members; and

    b.  Intentionally concealed the foregoing from the Kansas Class members.

668. Defendant's conduct proximately caused injuries to the Kansas Class members.

669. The Kansas Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

670. Defendant's violations present a continuing risk to the Kansas Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

671. Pursuant to Kan. Stat. Ann. § 50-634, Kansas Class members seek actual damages, reasonable attorneys' fees, and any other just and proper relief available under the Kansas CPA.

## COUNT 46
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE KENTUCKY CLASS MEMBERS

672. Plaintiffs incorporate herein the allegations contained above.

673. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Kentucky (the "Kentucky Class members").

674. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

675. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the Kentucky Class members, who might be foreseeably harmed by PFAS Carpet Products.

676. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a.  PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b.  PFAS contamination poses significant threats to public health, economic welfare, and the environment.

122

677. Defendant failed to disclose these threats to the Kentucky Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

678. At all relevant times, PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Kentucky Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

679. At all relevant times, the Kentucky Class members used their PFAS Carpet Products as intended.

680. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to persons and to property.

681. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

123

682. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

683. As a direct and proximate result of Defendant's unreasonably dangerous design of PFAS Carpet Products, the Kentucky Class members have been injured by widespread and toxic PFAS contamination.

684. These and other acts by Defendant were a direct and proximate cause of damage to Kentucky Class members.

COUNT 47
STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
ON BEHALF OF THE KENTUCKY CLASS MEMBERS

685. Plaintiffs incorporate herein the allegations contained above.

686. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Kentucky (the "Kentucky Class members").

687. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the Kentucky Class members.

124

688. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Kentucky Class members of those risks.

689. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

690. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

691. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

692. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Kentucky Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the Kentucky Class members used their PFAS Carpet Products as intended.

693. Had Defendant provided adequate warnings regarding the dangers of the PFAS Carpet Products to the Kentucky Class members, those products would not have gained widespread acceptance in the marketplace, and the Kentucky Class members would not have installed the PFAS Carpet Products at issue.

694. These and other acts by Defendant were a direct and proximate cause of damage to Kentucky Class members.

<div align="center">

**COUNT 48**
**VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT**
**(KY. REV. STAT. ANN. §§ 367.110 *ET SEQ.*)**
**ON BEHALF OF THE KENTUCKY CLASS MEMBERS**

</div>

695. Plaintiffs incorporate herein the allegations contained above.

696. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Kentucky (the "Kentucky Class members").

697. The Kentucky Consumer Protection Act ("Kentucky CPA") provides that any "unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. Ky. Rev. Stat. Ann. § 367.170.

698. Defendant, Plaintiffs, and Kentucky Class members are "persons" within the meaning of Ky. Rev. Stat. Ann. § 367.110.

699. Defendant and the Kentucky Class members were engaged in "trade" and "commerce" within the meaning of Ky. Rev. Stat. Ann. § 367.110.

700. In purchasing their carpets, the Kentucky Class members were deceived by Defendant's failure to disclose that their PFAS Carpet Products were treated with harmful PFAS chemicals.

701. The Kentucky Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

<div align="center">126</div>

702. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

703. Defendant knew or should have known that its conduct violated the Kentucky CPA.

704. Defendant owed the Kentucky Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

a.  Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Kentucky Class members; and

b.  Intentionally concealed the foregoing from the Kentucky Class members.

705. Defendant's conduct proximately caused injuries to the Kentucky Class members.

706. The Kentucky Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

707. Defendant's violations present a continuing risk to the Kentucky Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

708. The Kentucky Class members seek actual damages, attorneys' fees, and any other just and proper relief available under the Kentucky CPA.

127

## COUNT 49
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE LOUISIANA CLASS MEMBERS

709. Plaintiffs incorporate herein the allegations contained above.

710. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Louisiana (the "Louisiana Class members").

711. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

712. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the Louisiana Class members, who might be foreseeably harmed by PFAS Carpet Products.

713. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner.

b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

714. Defendant failed to disclose these threats to the Louisiana Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet products.

715. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Louisiana Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

716. At all relevant times, the Louisiana Class members used their PFAS Carpet Products as intended.

717. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of their PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to persons and to property.

718. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

719. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

129

720. As a direct and proximate result of Defendant's unreasonably dangerous design of the PFAS Carpet Products, the Louisiana Class members have been injured by widespread and toxic PFAS contamination.

721. These and other acts by Defendant were a direct and proximate cause of damage to the Louisiana Class members.

**COUNT 50**
**STRICT PRODUCTS LIABILITY (FAILURE TO WARN)**
**ON BEHALF OF THE LOUISIANA CLASS MEMBERS**

722. Plaintiffs incorporate herein the allegations contained above.

723. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Louisiana (the "Louisiana Class members").

724. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the Louisiana Class members.

725. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Louisiana Class members of those risks.

726. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS

130

Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

727. Defendant's inadequate warnings and instructions rendered PFAS Carpet Products defective and not reasonably safe.

728. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

729. Defendant's failure to warn proximately caused reasonably foreseeable injuries to Louisiana Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the Louisiana Class members used their PFAS Carpet Products as intended.

730. Had Defendant provided adequate warnings regarding the dangers of the PFAS Carpet Products to the Louisiana Class members, those products would not have gained widespread acceptance in the marketplace, and the Louisiana Class members would not have installed the carpets at issue.

731. These and other acts by Defendant were a direct and proximate cause of damage to the Louisiana Class members.

## COUNT 51
### VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### (LA. REV. STAT. ANN. §§ 51:1401 *ET SEQ.*)
### ON BEHALF OF THE LOUISIANA CLASS MEMBERS

732. Plaintiffs incorporate herein the allegations contained above.

733. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Louisiana (the "Louisiana Class members").

734. The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana UTPCPL") provides that any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" is unlawful. La. Rev. Stat. Ann. § 51:1405.

735. Defendant and the Louisiana Class members are "persons" within the meaning of La. Rev. Stat. Ann. § 51:1402.

736. Defendant and the Louisiana Class members were engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. Ann. § 51:1402.

737. In purchasing their PFAS Carpet Products, the Louisiana Class members were deceived by Defendant's failure to disclose that its PFAS Carpet Products were treated with harmful PFAS chemicals.

738. The Louisiana Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

132

739. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

740. Defendant knew or should have known that its conduct violated the Louisiana UTPCPL.

741. Defendant owed the Louisiana Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

    a. Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Louisiana Class members; and

    b. Intentionally concealed the foregoing from the Louisiana Class members.

742. Defendant's conduct proximately caused injuries to Louisiana Class members.

743. The Louisiana Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

744. Defendant's violations present a continuing risk to the Louisiana Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

745. The Louisiana Class members seek three times the actual damages sustained, reasonable attorneys' fees, and any other just and proper relief available under the La. Rev. Stat. Ann. § 51:1409.

## COUNT 52
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE MAINE CLASS MEMBERS

746. Plaintiffs incorporate herein the allegations contained above.

747. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Maine (the "Maine Class members").

748. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

749. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the Maine Class members, who might be foreseeably harmed by PFAS Carpet Products.

750. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

751. Defendant failed to disclose these threats to the Maine Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

134

752. At all relevant times, PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Maine Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

753. At all relevant times, the Maine Class members used their carpets with PFAS Carpet Products as intended.

754. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to persons and to property.

755. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

756. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

757. As a direct and proximate result of Defendant's unreasonably dangerous design of PFAS Carpet Products, the Maine Class members have been injured by widespread and toxic PFAS contamination.

758. These and other acts by Defendant were a direct and proximate cause of damage to the Maine Class members.

<div align="center">

**COUNT 53**
**STRICT PRODUCTS LIABILITY (FAILURE TO WARN)**
**ON BEHALF OF THE MAINE CLASS MEMBERS**

</div>

759. Plaintiffs incorporate herein the allegations contained above.

760. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Maine (the "Maine Class members").

761. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the Maine Class members.

762. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Maine Class members of those risks.

763. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS

<div align="center">136</div>

Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

764. Defendant's inadequate warnings and instructions rendered PFAS Carpet Products defective and not reasonably safe.

765. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

766. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Maine Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the Maine Class members used their PFAS Carpet Products as intended.

767. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to the Maine Class members, those products would not have gained widespread acceptance in the marketplace, and the Maine Class members would not have installed the PFAS Carpet Products at issue.

768. These and other acts by Defendant were a direct and proximate cause of damage to the Maine Class members.

## COUNT 54
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE MARYLAND CLASS MEMBERS

769. Plaintiffs incorporate herein the allegations contained above.

770. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Maryland (the "Maryland Class members").

771. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

772. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the Maryland Class members, who might be foreseeably harmed by PFAS Carpet Products.

773. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

   a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

   b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

774. Defendant failed to disclose these threats to Maryland Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

138

775. At all relevant times, PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Maryland Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

776. Maryland Class members used their PFAS Carpet Products as intended.

777. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to persons and to property.

778. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

779. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

139

780. As a direct and proximate result of Defendant's unreasonably dangerous design of PFAS Carpet Products, Maryland Class members have been injured by widespread and toxic PFAS contamination.

781. These and other acts by Defendant were a direct and proximate cause of damages to Maryland Class members.

**COUNT 55**
**STRICT PRODUCTS LIABILITY (FAILURE TO WARN)**
**ON BEHALF OF THE MARYLAND CLASS MEMBERS**

782. Plaintiffs incorporate herein the allegations contained above.

783. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Maryland (the "Maryland Class members").

784. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including Maryland Class members.

785. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and Maryland Class members of those risks.

786. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS

Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

787. Defendant's inadequate warnings and instructions rendered PFAS Carpet Products defective and not reasonably safe.

788. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

789. Defendant's failure to warn proximately caused reasonably foreseeable injuries to Maryland Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the Maryland Class members used their PFAS Carpet Products as intended.

790. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to the Maryland Class members, those products would not have gained widespread acceptance in the marketplace, and the Maryland Class members would not have installed the PFAS Carpet Products at issue.

791. These and other acts by Defendant were a direct and proximate cause of damage to the Maryland Class members.

## COUNT 56
### VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT
### (MD. CODE ANN., COM. LAW §§ 13-101 *ET SEQ.*)
### ON BEHALF OF THE MARYLAND CLASS MEMBERS

792. Plaintiffs incorporate herein the allegations contained above.

793. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Maryland (the "Maryland Class members").

794. The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good, including "failure to state a material fact if the failure deceives or tends to deceive" and "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same," Md. Code Ann., Com. Law § 13-301, regardless of whether the consumer is actually deceived or damaged, Md. Code Ann., Com. Law § 13-302.

795. Defendant, Plaintiff, and the Maryland Class members are "persons" within the meaning of Md. Code Ann., Com. Law § 13-101(h).

796. In purchasing their PFAS Carpet Products, the Maryland Class members were deceived by Defendant's failure to disclose that their PFAS Carpet Products were treated with harmful PFAS chemicals.

797. The Maryland Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

142

798. Defendant's concealment, suppression, and omission of material facts was likely to and did in fact deceive reasonable consumers.

799. Defendant knew or should have known that its conduct violated the Maryland CPA.

800. Defendant owed the Maryland Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

    a.   Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Maryland Class members; and

    b.   Intentionally concealed the foregoing from the Maryland Class members.

801. Defendant's conduct proximately caused injuries to the Maryland Class members.

802. The Maryland Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

803. Defendant's violations present a continuing risk to the Maryland Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

804. Pursuant to Md. Code Ann., Com. Law § 13-408, the Maryland Class members seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## COUNT 57
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (DESIGN DEFECT) ON BEHALF OF THE MASSACHUSETTS CLASS MEMBERS

805. Plaintiffs incorporate herein the allegations contained above.

806. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Massachusetts (the "Massachusetts Class members").

807. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

808. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all people, including the Massachusetts Class members, who might be foreseeably harmed by PFAS Carpet Products.

809. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

810. Defendant failed to disclose these threats to the Massachusetts Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

144

811. At all relevant times, PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Massachusetts Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

812. At all relevant times, the Massachusetts Class members used their PFAS Carpet Products as intended.

813. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to people and to property.

814. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

815. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

816. As a direct and proximate result of Defendant's unreasonably dangerous design of PFAS Carpet Products, the Massachusetts Class members have been injured by widespread and toxic PFAS contamination.

817. These and other acts by Defendant were a direct and proximate cause of damage to the Massachusetts Class members.

## COUNT 58
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (FAILURE TO WARN) ON BEHALF OF THE MASSACHUSETTS CLASS MEMBERS

818. Plaintiffs incorporate herein the allegations contained above.

819. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Massachusetts (the "Massachusetts Class members").

820. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including Massachusetts Class members.

821. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Massachusetts Class members of those risks.

822. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS

146

Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

823. Defendant's inadequate warnings rendered the PFAS Carpet Products defective and not reasonably safe.

824. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

825. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Massachusetts Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products.

826. At all relevant times, the Massachusetts Class members used their PFAS Carpet Products as intended.

827. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to the Massachusetts Class members, those products would not have gained widespread acceptance in the marketplace, and the Massachusetts Class members would not have installed the PFAS Carpet Products at issue.

828. These and other acts by Defendant were a direct and proximate cause of damage to the Massachusetts Class members.

## COUNT 59

### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
### (MICH. COMP. LAWS ANN. §§ 445.901 *ET SEQ.*)
### ON BEHALF OF THE MICHIGAN CLASS MEMBERS

829. Plaintiffs incorporate herein the allegations contained above.

830. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Michigan (the "Michigan Class members").

831. The Michigan Consumer Protection Act ("Michigan CPA") states that any "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful," including "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and also failing to "reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer." Mich. Comp. Law Ann. § 445.903.

832. Defendant and the Michigan Class are "persons" within the meaning of Mich. Comp. Law Ann. § 445.902.

833. Defendant committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of Mich. Comp. Law Ann. § 445.902.

834. In purchasing their PFAS Carpet Products, the Michigan Class members were deceived by Defendant's failure to disclose that its PFAS Carpet Products were treated with harmful PFAS chemicals.

148

835. The Michigan Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

836. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

837. Defendant knew or should have known that its conduct violated the Michigan CPA.

838. Defendant owed the Michigan Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

    a.  Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Michigan Class members; and

    b.  Intentionally concealed the foregoing from the Michigan Class members.

839. Defendant's conduct proximately caused injuries to the Michigan Class members.

840. Defendant's violations present a continuing risk to the Michigan Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

841. The Michigan Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of the Defendant's misrepresentations and omissions.

842. Pursuant to Mich. Comp. Law Ann. § 445.911, the Michigan Class members seek actual damages, reasonable attorneys' fees, costs, and any other just and proper relief available under the Michigan CPA.

## COUNT 60
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE MINNESOTA CLASS MEMBERS

843. Plaintiffs incorporate herein the allegations contained above.

844. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Minnesota (the "Minnesota Class members").

845. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

846. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the Minnesota Class members, who might be foreseeably harmed by PFAS Carpet Products.

847. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

150

848. Defendant failed to disclose these threats to the Minnesota Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

849. At all relevant times, PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Minnesota Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

850. At all relevant times, the Minnesota Class members used their PFAS Carpet Products as intended.

851. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered their products defective, not reasonably safe, and unreasonably dangerous to persons and to property.

852. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

151

853. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

854. As a direct and proximate result of Defendant's unreasonably dangerous design of the PFAS Carpet Products, the Minnesota Class members have been injured by widespread and toxic PFAS contamination.

855. These and other acts by Defendant were a direct and proximate cause of damage to the Minnesota Class members.

## COUNT 61
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN) ON BEHALF OF THE MINNESOTA CLASS MEMBERS

856. Plaintiffs incorporate herein the allegations contained above.

857. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Minnesota (the "Minnesota Class members").

858. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including Minnesota Class members.

152

859. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and Minnesota Class members of those risks.

860. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

861. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

862. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

863. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Minnesota Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products.

864. Minnesota Class members used their PFAS Carpet Products as intended.

865. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to Minnesota Class members, those products would not have gained widespread acceptance in the marketplace, and the Minnesota Class members would not have installed the PFAS Carpet Products at issue.

153

866. These and other acts by Defendant were a direct and proximate cause of damage to the Minnesota Class members.

<center>

**COUNT 62**
**VIOLATION OF THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(MINN. STAT. ANN. §§ 325D.44 *ET SEQ.*)**
**ON BEHALF OF THE MINNESOTA CLASS MEMBERS**

</center>

867. Plaintiffs incorporate herein the allegations contained above.

868. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Minnesota (the "Minnesota Class members").

869. The Minnesota Uniform Deceptive Trade Practices Act ("Minnesota UDTPA") states that a person "engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person… represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," while also stating the complainant "need not prove … actual confusion or misunderstanding" in order to prevail in an action under Minn. Stat. Ann. § 325D.44.

870. In the course of business, Defendant knowingly concealed, suppressed, and omitted the material fact that carpets and rugs purchased by the Minnesota Class members were treated with PFASs, with the intent that others rely upon the concealment, suppression, or omission.

871. In purchasing their PFAS Carpet Products, the Minnesota Class members were deceived by Defendant's failure to disclose that its PFAS Carpet Products were treated with harmful PFAS chemicals.

<center>154</center>

872. The Minnesota Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

873. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

874. Defendant knew or should have known that its conduct violated the Minnesota UDTPA.

875. Defendant owed the Minnesota Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

    a.  Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by Minnesota Class members; and

    b.  Intentionally concealed the foregoing from the Minnesota Class members.

876. Defendant's conduct proximately caused injuries to the Minnesota Class members.

877. The Minnesota Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

878. Defendant's violations present a continuing risk to the Minnesota Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

155

879. The Minnesota Class members seek damages, along with attorneys' fees, costs, and any other just and proper relief under Minn. Stat. Ann. § 325D.43.

## COUNT 63
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE MISSISSIPPI CLASS MEMBERS

880. Plaintiffs incorporate herein the allegations contained above.

881. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Mississippi (the "Mississippi Class members").

882. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

883. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the Mississippi Class members, who might be foreseeably harmed by PFAS Carpet Products.

884. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner.

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

156

885. Defendant failed to disclose these threats to Mississippi Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

886. At all relevant times, PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Mississippi Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

887. Mississippi Class members used their PFAS Carpet Products as intended.

888. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to people and to property.

889. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

157

890. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

891. As a direct and proximate result of Defendant's unreasonably' unreasonably dangerous design of PFAS Carpet Products, the Mississippi Class members have been injured by widespread and toxic PFAS contamination.

892. These and other acts by Defendant were a direct and proximate cause of damage to the Mississippi Class members.

## COUNT 64
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN) ON BEHALF OF THE MISSISSIPPI CLASS MEMBERS

893. Plaintiffs incorporate herein the allegations contained above.

894. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Mississippi (the "Mississippi Class members").

895. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including Mississippi Class members.

896. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and Mississippi Class members of those risks.

897. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of the PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

898. Defendant's inadequate warnings and instructions rendered PFAS Carpet Products defective and not reasonably safe.

899. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

900. Defendant's failure to warn proximately caused reasonably foreseeable injuries to Mississippi Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products.

901. At all relevant times, the Mississippi Class members used their PFAS Carpet Products as intended.

902. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to the Mississippi Class members, those products would not have gained

159

widespread acceptance in the marketplace, and the Mississippi Class members would not have installed the PFAS Carpet Products at issue.

903. These and other acts by Defendant were a direct and proximate cause of damage to the Mississippi Class members.

<div align="center">

**COUNT 65**
**STRICT PRODUCTS LIABILITY (DESIGN DEFECT)**
**ON BEHALF OF THE MISSOURI CLASS MEMBERS**

</div>

904. Plaintiffs incorporate herein the allegations contained above.

905. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Missouri (the "Missouri Class members").

906. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

907. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all people, including the Missouri Class members, who might be foreseeably harmed by PFAS Carpet Products.

908. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a.   PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

<div align="center">160</div>

b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

909. Defendant failed to disclose these threats to the Missouri Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

910. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Missouri Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

911. Missouri Class members used their PFAS Carpet Products as intended.

912. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered their products defective, not reasonably safe, and unreasonably dangerous to people and to property.

913. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of

161

using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

914. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

915. As a direct and proximate result of Defendant's unreasonably dangerous design of PFAS Carpet Products, Missouri Class members have been injured by widespread and toxic PFAS contamination.

916. These and other acts by Defendant were a direct and proximate cause of damage to the Missouri Class members.

COUNT 66
STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
ON BEHALF OF THE MISSOURI CLASS MEMBERS

917. Plaintiffs incorporate herein the allegations contained above.

918. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Missouri (the "Missouri Class members").

919. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including Missouri Class members.

162

920. Despite Defendant's superior knowledge of the risks posed by the PFAS Carpet Products, Defendant failed to warn consumers, the public, and Missouri Class members of those risks.

921. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

922. Defendant's inadequate warnings and instructions rendered PFAS Carpet Products defective and not reasonably safe.

923. Defendant's PFAS Carpet Products were defective by virtue of their inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

924. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Missouri Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the Missouri Class members used their PFAS Carpet Products as intended.

925. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to Missouri Class members, those products would not have gained widespread acceptance in the marketplace, and the Missouri Class members would not have installed the carpets at issue.

163

926. These and other acts by Defendant were a direct and proximate cause of damage to the Missouri Class members.

<div align="center">

COUNT 67
VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
(MO. REV. STAT. §§ 407.005 ET SEQ.)
ON BEHALF OF THE MISSOURI CLASS MEMBERS

</div>

927. Plaintiffs incorporate herein the allegations contained above.

928. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Missouri (the "Missouri Class members").

929. The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020(1).

930. Defendant and the Missouri Class members are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

931. Defendant committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of Mo. Rev. Stat. § 407.010(7).

932. In the conduct of trade or commerce, Defendant knowingly concealed, suppressed, and omitted the material fact that carpets purchased by the Missouri Class members were treated with PFAS Carpet Products, with the intent that others rely upon the concealment, suppression, or omission.

<div align="center">164</div>

933. In purchasing their PFAS Carpet Products, the Missouri Class members were deceived by Defendant's failure to disclose that its PFAS Carpet Products were treated with harmful PFAS chemicals.

934. The Missouri Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

935. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

936. Defendant knew or should have known its conduct violated the MMPA.

937. Defendant owed the Missouri Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

    a.  Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Missouri Class members; and

    b.  Intentionally concealed the foregoing from the Missouri Class members.

938. Defendant's conduct proximately caused injuries to the Missouri Class members.

939. The Missouri Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

940. Defendant's violations present a continuing risk to the Missouri Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

941. The Missouri Class members seek damages in amounts to be proven at trial, along with attorneys' fees, costs, and punitive damages, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

## COUNT 68
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE MONTANA CLASS MEMBERS

942. Plaintiffs incorporate herein the allegations contained above.

943. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Montana (the "Montana Class members").

944. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

945. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the Montana Class members, who might be foreseeably harmed by PFAS Carpet Products.

946. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

166

947. Defendant failed to disclose these threats to the Montana Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

948. At all relevant times, PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Montana Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

949. Montana Class members used their PFAS Carpet Products as intended.

950. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to persons and to property.

951. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

167

952. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

953. As a direct and proximate result of Defendant's unreasonably' unreasonably dangerous design of PFAS Carpet Products, the Montana Class members have been injured by widespread and toxic PFAS contamination.

954. These and other acts by Defendant were a direct and proximate cause of damage to the Montana Class members.

## COUNT 69
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
### ON BEHALF OF THE MONTANA CLASS MEMBERS

955. Plaintiffs incorporate herein the allegations contained above.

956. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Montana (the "Montana Class members").

957. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including Montana Class members.

168

958. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Montana Class members of those risks.

959. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

960. Defendant's inadequate warnings and instructions rendered PFAS Carpet Products defective and not reasonably safe.

961. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

962. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Montana Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products.

963. At all relevant times, the Montana Class members used their PFAS Carpet Products as intended.

964. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to the Montana Class members, those products would not have gained

169

widespread acceptance in the marketplace, and the Montana Class members would not have installed the PFAS Carper Products at issue.

965. These and other acts by Defendant were a direct and proximate cause of damage to the Montana Class members.

<div align="center">

**COUNT 70**

**VIOLATION OF THE MONTANA CONSUMER PROTECTION ACT**
**(MONT. CODE ANN. §§ 30-14-101, *ET SEQ.*)**
**ON BEHALF OF THE MONTANA CLASS MEMBERS**

</div>

966. Plaintiffs incorporate herein the allegations contained above.

967. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Montana (the "Montana Class members").

968. The Montana Consumer Protection Act ("Montana CPA") makes any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful. Mont. Code Ann. § 30-14-103.

969. In purchasing their PFAS Carpet Products, the Class members were deceived by Defendant's failure to disclose the material fact that its carpets were treated with PFAS Carpet Products.

970. The Montana Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

971. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

<div align="center">170</div>

972. Defendant knew or should have known that its conduct violated the Montana CPA.

973. Defendant owed the Montana Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

    a.  Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Montana Class members; and

    b.  Intentionally concealed the foregoing from the Montana Class members.

974. Defendant's conduct proximately caused injuries to the Montana Class members.

975. The Montana Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

976. Defendant's violations present a continuing risk to the Montana Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

977. The Montana Class members seek three times their actual damages in the amount of any ascertainable loss of money or property sustained, costs, attorney's fees, and all other appropriate and available remedies under the Mont. Code Ann. § 30-14-133.

## COUNT 71
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE NEBRASKA CLASS MEMBERS

978. Plaintiffs incorporate herein the allegations contained above.

979. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Nebraska (the "Nebraska Class members").

980. At all times relevant to this Complaint, Defendant was engaged in the business of selling PFAS Carpet Products.

981. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including Nebraska Class members, who might be foreseeably harmed by PFAS Carpet Products.

982. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

   a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

   b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

983. Defendant failed to disclose these threats to the Nebraska Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

172

984. At all relevant times, PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Nebraska Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

985. At all relevant times, the Nebraska Class members used their carpets with PFAS Carpet Products as intended.

986. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs.

987. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to people and to property.

988. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

173

989. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

990. As a direct and proximate result of Defendant's unreasonably dangerous design of PFAS Carpet Products, the Nebraska Class members have been injured by widespread and toxic PFAS contamination.

991. These and other acts by Defendant were a direct and proximate cause of damage to the Nebraska Class members.

COUNT 72
NEGLIGENCE (FAILURE TO WARN)
ON BEHALF OF THE NEBRASKA CLASS MEMBERS

992. Plaintiffs incorporate herein the allegations contained above.

993. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Nebraska (the "Nebraska Class members").

994. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew or should have known about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including Nebraska Class members.

174

995. Despite Defendant's superior knowledge of the safety risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Nebraska Class members of those risks.

996. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

997. Defendant's inadequate warnings and instructions rendered PFAS Carpet Products defective and not reasonably safe.

998. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS products reached their end users without substantial change in their condition.

999. Defendant's failure to warn proximately caused reasonably foreseeable injuries to Nebraska Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the Nebraska Class members used their PFAS Carpet Products as intended.

1000. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to Nebraska Class members, those products would not have gained widespread acceptance in the marketplace, and the Nebraska Class members would not have installed the PFAS Carpet Products at issue.

175

1001. These and other acts by Defendant were a direct and proximate cause of damage to the Nebraska Class members.

## COUNT 73
### VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT
### (NEB. REV. STAT. §§ 59-1601 *ET SEQ.*)
### ON BEHALF OF THE NEBRASKA CLASS MEMBERS

1002. Plaintiffs incorporate herein the allegations contained above.

1003. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Nebraska (the "Nebraska Class members").

1004. The Nebraska Consumer Protection Act ("Nebraska CPA") states any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. Neb. Rev. Stat. § 59-1602.

1005. In purchasing their carpets, the Nebraska Class members were deceived by Defendant's failure to disclose the material fact that its PFAS Carpet Products were treated with harmful PFAS chemicals.

1006. The Nebraska Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

1007. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

1008. Defendant knew or should have known that its conduct violated the Nebraska CPA.

1009. Defendant owed the Nebraska Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

a. Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Nebraska Class members; and

b. Intentionally concealed the foregoing from the Nebraska Class members.

1010. Defendant's conduct proximately caused injuries to the Nebraska Class members.

1011. The Nebraska Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

1012. Defendant's violations present a continuing risk to the Nebraska Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

1013. The Nebraska Class members seek their actual damages, punitive damages, costs, attorney's fees, and all other appropriate and available remedies under the Nebraska CPA. Neb. Rev. Stat. § 59-1609.

## COUNT 74
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE NEVADA CLASS MEMBERS

1014. Plaintiffs incorporate herein the allegations contained above.

1015. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Nevada (the "Nevada Class members").

1016. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1017. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all people, including the Nevada Class members, who might be foreseeably harmed by PFAS Carpet Products.

1018. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

1019. Defendant failed to disclose these threats to the Nevada Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

178

1020. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Nevada Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1021. At all relevant times, the Nevada Class members used their PFAS Carpet Products as intended.

1022. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to people and to property.

1023. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

1024. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

179

1025. As a direct and proximate result of Defendant's unreasonably dangerous design of PFAS Carpet Products, the Nevada Class members have been injured by widespread and toxic PFAS contamination.

1026. These and other acts by Defendant were a direct and proximate cause of damage to the Nevada Class members.

<div align="center">

**COUNT 75**
**STRICT PRODUCTS LIABILITY (FAILURE TO WARN)**
**ON BEHALF OF THE NEVADA CLASS MEMBERS**

</div>

1027. Plaintiffs incorporate herein the allegations contained above.

1028. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Nevada (the "Nevada Class members").

1029. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including Nevada Class members.

1030. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Nevada Class members of those risks.

1031. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS

<div align="center">180</div>

Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1032. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

1033. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1034. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Nevada Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products.

1035. At all relevant times, the Nevada Class members used their PFAS Carpet Products as intended.

1036. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to the Nevada Class members, those products would not have gained widespread acceptance in the marketplace, and the Nevada Class members would not have installed the PFAS Carpet Products at issue.

1037. These and other acts by Defendant were a direct and proximate cause of damage to the Nevada Class members.

## COUNT 76
### VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT
### (NEV. REV. STAT. §§ 598.0903 *ET SEQ.*)
### ON BEHALF OF THE NEVADA CLASS MEMBERS

1038. Plaintiffs incorporate herein the allegations contained above.

1039. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Nevada (the "Nevada Class members").

1040. The Nevada Deceptive Trade Practices Act ("Nevada DTPA") prohibits deceptive trade practices. Nev. Rev. Stat. § 598.0923(1)(b) provides that a "person engages in a 'deceptive trade practice" when in the course of his or her business or occupation he or she knowingly … [f]ails to disclose a material fact in connection with the sale or lease of goods or services."

1041. In purchasing their PFAS Carpet Products, the Nevada Class members were deceived by Defendant's failure to disclose the material fact that their carpets were treated with harmful PFAS chemicals.

1042. The Nevada Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

1043. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

1044. Defendant knew or should have known that its conduct violated the Nevada DTPA.

182

1045. Defendant owed the Nevada Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

a. Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Nevada Class members; and

b. Intentionally concealed the foregoing from the Nevada Class members.

1046. Defendant's conduct proximately caused injuries to the Nevada Class members.

1047. The Nevada Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

1048. Defendant's violations present a continuing risk to the Nevada Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

1049. The Nevada Class members seek their actual damages, punitive damages, costs, attorney's fees, and all other appropriate and available remedies under the Nevada DTPA. Nev. Rev. Stat. § 41.600.

### COUNT 77
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE NEW HAMPSHIRE CLASS MEMBERS

1050. Plaintiffs incorporate herein the allegations contained above.

1051. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in New Hampshire (the "New Hampshire Class members").

1052. At all times relevant to this Complaint, Defendant was engaged in the business of selling PFAS Carpet Products.

1053. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all people, including the New Hampshire Class members, who might be foreseeably harmed by PFAS Carpet Products.

1054. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

1055. Defendant failed to disclose these threats to the New Hampshire Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

1056. At all relevant times, PFAS Carpet Products were in a defective condition and unreasonably dangerous to the New Hampshire Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1057. New Hampshire Class members used their PFAS Carpet Products as intended.

184

1058. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered their products defective, not reasonably safe, and unreasonably dangerous to people and to property.

1059. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

1060. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

1061. As a direct and proximate result of Defendant's unreasonably dangerous design of the PFAS Carpet Products, the New Hampshire Class members have been injured by widespread and toxic PFAS contamination.

1062. These and other acts by Defendant were a direct and proximate cause of damage to the New Hampshire Class members.

185

## COUNT 78
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
### ON BEHALF OF THE NEW HAMPSHIRE CLASS MEMBERS

1063. Plaintiffs incorporate herein the allegations contained above.

1064. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in New Hampshire (the "New Hampshire Class members").

1065. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the New Hampshire Class members.

1066. Despite Defendant's superior knowledge of the risks posed by the PFAS Carpet Products, Defendant failed to warn consumers, the public, and the New Hampshire Class members of those risks.

1067. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1068. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

186

1069. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1070. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the New Hampshire Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products.

1071. At all relevant times, the New Hampshire Class members used their PFAS Carpet Products as intended.

1072. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to the New Hampshire Class members, those products would not have gained widespread acceptance in the marketplace, and the New Hampshire Class members would not have installed the carpets at issue.

1073. These and other acts by Defendant were a direct and proximate cause of damage to the New Hampshire Class members.

### COUNT 79
### VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT
### (N.H. REV. STAT. ANN. §§ 358-A:1 ET SEQ.)
### ON BEHALF OF THE NEW HAMPSHIRE CLASS MEMBERS

1074. Plaintiffs incorporate herein the allegations contained above.

1075. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in New Hampshire (the "New Hampshire Class members").

187

1076. The New Hampshire Consumer Protection Act ("New Hampshire CPA") makes it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." N.H. Rev. Stat. § 358-A:2.

1077. Defendant and the New Hampshire Class members are "persons" within the meaning of N.H. Rev. Stat. Ann. § 358-A:1.

1078. Defendant's actions as set forth herein occurred in the conduct of trade and commerce within the meaning of N.H. Rev. Stat. Ann. § 358-A:1.

1079. In purchasing their PFAS Carpet Products, the New Hampshire Class members were deceived by Defendant's failure to disclose that its carpets were treated with harmful PFAS chemicals.

1080. The New Hampshire Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

1081. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

1082. Defendant knew or should have known that its conduct violated the New Hampshire CPA.

1083. Defendant owed the New Hampshire Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

188

a. Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the New Hampshire Class members; and

b. Intentionally concealed the foregoing from the New Hampshire Class members.

1084. Defendant's conduct proximately caused injuries to the New Hampshire Class members.

1085. The New Hampshire Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct, as a direct and natural consequence of Defendant's omissions.

1086. Defendant's violations present a continuing risk to the New Hampshire Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

1087. Because Defendant's willful conduct caused injury to Plaintiff' property through violations of the New Hampshire CPA, the New Hampshire Class members seek recovery of actual damages or $1,000, whichever is greater; treble damages; costs and reasonable attorneys' fees; and any other just and proper relief under N.H. Rev. Stat. Ann. § 358-A:10.

## COUNT 80
## STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
## ON BEHALF OF THE NEW JERSEY CLASS MEMBERS

1088. Plaintiffs incorporate herein the allegations contained above.

1089. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in New Jersey (the "New Jersey Class members").

1090. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1091. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all people, including the New Jersey Class members, who might be foreseeably harmed by the PFAS Carpet Products.

1092. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a.  PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b.  PFAS contamination poses significant threats to public health, economic welfare, and the environment.

1093. Defendant failed to disclose these threats to the New Jersey Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

190

1094. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the New Jersey Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1095. At all relevant times, the New Jersey Class members used their PFAS Carpet Products as intended.

1096. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to people and to property.

1097. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

1098. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

191

1099. As a direct and proximate result of Defendant's unreasonably dangerous design of PFAS Carpet Products, the New Jersey Class members have been injured by widespread and toxic PFAS contamination.

1100. These and other acts by Defendant were a direct and proximate cause of damage to the New Jersey Class members.

<div align="center">

COUNT 81
STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
ON BEHALF OF THE NEW JERSEY CLASS MEMBERS

</div>

1101. Plaintiffs incorporate herein the allegations contained above.

1102. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in New Jersey (the "New Jersey Class members").

1103. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the New Jersey Class members.

1104. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the New Jersey Class members of those risks.

1105. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of the PFAS

<div align="center">192</div>

Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1106. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

1107. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1108. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the New Jersey Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the New Jersey Class members used their PFAS Carpet Products as intended.

1109. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to New Jersey Class members, those products would not have gained widespread acceptance in the marketplace, and the New Jersey Class members would not have installed the PFAS Carpet Products at issue.

1110. These and other acts by Defendant were a direct and proximate cause of damage to the New Jersey Class members.

## COUNT 82
## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
## (N.J. STAT. ANN. §§ 56:8-1 *ET SEQ.*)
## ON BEHALF OF THE NEW JERSEY CLASS MEMBERS

1111. Plaintiffs incorporate herein the allegations contained above.

1112. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in New Jersey (the "New Jersey Class members").

1113. The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful the "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J. Stat. Ann. § 56:8-2.

1114. Defendant and the New Jersey Class members are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

1115. Defendant engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c), (d).

1116. In purchasing their PFAS Carpet Products, the New Jersey Class members were deceived by Defendant's failure to disclose that its PFAS Carpet Products were treated with harmful PFAS chemicals.

194

1117. The New Jersey Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

1118. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

1119. Defendant knew or should have known that its conduct violated the New Jersey CFA.

1120. Defendant owed the New Jersey Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

a. Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by New Jersey Class members; and

b. Intentionally concealed the foregoing from the New Jersey Class members.

1121. Defendant's conduct proximately caused injuries to the New Jersey Class members.

1122. The New Jersey Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

1123. Defendant's violations present a continuing risk to the New Jersey Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

1124. The New Jersey Class members are entitled to recover treble damages, costs, and reasonable attorneys' fees pursuant to N.J. Stat. Ann. § 56:8-19, and any other just and appropriate relief.

<div align="center">

**COUNT 83**
**STRICT PRODUCTS LIABILITY (DESIGN DEFECT)**
**ON BEHALF OF THE NEW MEXICO CLASS MEMBERS**

</div>

1125. Plaintiffs incorporate herein the allegations contained above.

1126. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in New Mexico (the "New Mexico Class members").

1127. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1128. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the New Mexico Class members, who might be foreseeably harmed by PFAS Carpet Products.

1129. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a.  PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b.  PFAS contamination poses significant threats to public health, economic welfare, and the environment.

<div align="center">196</div>

1130. Defendant failed to disclose these threats to the New Mexico Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

1131. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the New Mexico Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1132. At all relevant times, the New Mexico Class members used their PFAS Carpet Products as intended.

1133. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to people and to property.

1134. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

197

1135. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

1136. As a direct and proximate result of Defendant's unreasonably dangerous design of the PFAS Carpet Products, the New Mexico Class members have been injured by widespread and toxic PFAS contamination.

1137. These and other acts by Defendant were a direct and proximate cause of damage to the New Mexico Class members.

COUNT 84
STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
ON BEHALF OF THE NEW MEXICO CLASS MEMBERS

1138. Plaintiffs incorporate herein the allegations contained above.

1139. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in New Mexico (the "New Mexico Class members").

1140. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the New Mexico Class members.

198

1141. Notwithstanding Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the New Mexico Class members of those risks.

1142. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of the PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1143. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

1144. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1145. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the New Mexico Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the New Mexico Class members used their PFAS Carpet Products as intended.

1146. Had Defendant provided adequate warnings regarding the dangers of the PFAS Carpet Products to the New Mexico Class members, those products would not have gained widespread acceptance in the marketplace, and the New Mexico Class members would not have installed the PFAS Carpet Products at issue.

1147. These and other acts by Defendant were a direct and proximate cause of damage to the New Mexico Class members.

## COUNT 85
### VIOLATION OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT
### (N.M. STAT. ANN. §§ 57-12-1 *ET SEQ.*)
### ON BEHALF OF THE NEW MEXICO CLASS MEMBERS

1148. Plaintiffs incorporate herein the allegations contained above.

1149. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in New Mexico (the "New Mexico Class members").

1150. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including but not limited to "failing to state a material fact if doing so deceives or tends to deceive." N.M. Stat. Ann. § 57-12-2(D).

1151. Defendant and the New Mexico Class members are "person[s]" within the meaning of N.M. Stat. Ann. § 57-12-2.

1152. Defendant's actions as set forth herein occurred in the conduct of trade or commerce as defined by N.M. Stat. Ann. § 57-12-2.

200

1153. In purchasing their PFAS Carpet Products, the New Mexico Class members were deceived by Defendant's failure to disclose that its PFAS Carpet Products were treated with harmful PFAS chemicals.

1154. The New Mexico Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

1155. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

1156. Defendant knew or should have known that its conduct violated the New Mexico UTPA.

1157. Defendant owed the New Mexico Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

    a. Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by New Mexico Class members; and

    b. Intentionally concealed the foregoing from the New Mexico Class members.

1158. Defendant's conduct proximately caused injuries to the New Mexico Class members.

1159. The New Mexico Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

1160. Defendant's violations present a continuing risk to New Mexico Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

1161. Because Defendant's unconscionable, willful conduct caused actual harm to Plaintiff, the New Mexico Class members seek recovery of actual damages or $100, whichever is greater; discretionary treble damages; reasonable attorneys' fees and costs; and all other proper and just relief available under N.M. Stat. Ann. § 57-12-10.

## COUNT 86
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT) ON BEHALF OF THE NEW YORK CLASS MEMBERS

1162. Plaintiffs incorporate herein the allegations contained above.

1163. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in New York (the "New York Class members").

1164. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1165. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all people, including the New York Class members, who might be foreseeably harmed by PFAS Carpet Products.

1166. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

202

a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

1167. Defendant failed to disclose these threats to the New York Class members and the public generally but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

1168. At all times relevant to this Complaint, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the New York Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1169. New York Class members used their PFAS Carpet Products as intended.

1170. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered their products defective, not reasonably safe, and unreasonably dangerous to people and to property.

203

1171. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

1172. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

1173. As a direct and proximate result of Defendant's unreasonably dangerous design of PFAS Carpet Products, the New York Class members have been injured by widespread and toxic PFAS contamination.

1174. These and other acts by Defendant were a direct and proximate cause of damage to the New York Class members.

COUNT 87
STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
ON BEHALF OF THE NEW YORK CLASS MEMBERS

1175. Plaintiffs incorporate herein the allegations contained above.

1176. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in New York (the "New York Class members").

1177. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended

to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including New York Class members.

1178. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the New York Class members of those risks.

1179. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1180. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

1181. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1182. Defendant's failure to warn proximately caused reasonably foreseeable injuries to New York Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the New York Class members used their PFAS Carpet Products as intended.

1183. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to New York Class members, those products would not have gained

widespread acceptance in the marketplace, and the New York Class members would not have installed the PFAS Carpet Products at issue.

1184. These and other acts by Defendant were a direct and proximate cause of damage to the New York Class members.

<div align="center">

COUNT 88
PRODUCTS LIABILITY (DESIGN DEFECT)
ON BEHALF OF THE NORTH CAROLINA CLASS MEMBERS

</div>

1185. Plaintiffs incorporate herein the allegations contained above.

1186. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in North Carolina (the "North Carolina Class members").

1187. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1188. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to act negligently in placing into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the North Carolina Class members, who might be foreseeably harmed by PFAS Carpet Products.

1189. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a.  PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

<div align="center">

206

</div>

b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

1190. Defendant failed to disclose these threats to the North Carolina Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

1191. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the North Carolina Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1192. At all relevant times, the North Carolina Class members used their PFAS Carpet Products as intended.

1193. Defendant knew of these risks and nevertheless failed to use reasonable care and acted negligently in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to people and to property.

1194. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of

using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

1195. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

1196. As a direct and proximate result of Defendant's unreasonably dangerous design of the PFAS Carpet Products, the North Carolina Class members have been injured by widespread and toxic PFAS contamination.

1197. These and other acts by Defendant were a direct and proximate cause of damage to the North Carolina Class members.

**COUNT 89**
**PRODUCTS LIABILITY (FAILURE TO WARN)**
**ON BEHALF OF THE NORTH CAROLINA CLASS MEMBERS**

1198. Plaintiffs incorporate herein the allegations contained above.

1199. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in North Carolina (the "North Carolina Class members").

1200. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to act unreasonably in failing to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew or should have known about. Defendant's duty to warn extended to all third parties who might be

foreseeably harmed by the ordinary use and misuse of its products, including North Carolina Class members.

1201. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, they unreasonably failed to warn consumers, the public, and the North Carolina Class members of those risks.

1202. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1203. Defendant's inadequate warnings and instructions rendered PFAS Carpet Products defective and not reasonably safe.

1204. Defendant's PFAS Carpet Products acted unreasonably by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1205. Defendant's failure to reasonably warn proximately caused reasonably foreseeable injuries to the North Carolina Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products.

1206. At all relevant times, the North Carolina Class members used their PFAS Carpet Products as intended.

1207. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to North Carolina Class members, those products would not have gained widespread acceptance in the marketplace, and the North Carolina Class members would not have installed the PFAS Carpet Products at issue.

1208. These and other acts by Defendant were a direct and proximate cause of damage to the North Carolina Class members.

## COUNT 90
### VIOLATION OF NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
### (N.C. GEN. STAT. §§ 75-1.1 ET SEQ.)
### ON BEHALF OF THE NORTH CAROLINA CLASS MEMBERS

1209. Plaintiffs incorporates by reference the allegations in the preceding paragraphs of this Complaint.

1210. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in North Carolina (the "North Carolina Class members").

1211. North Carolina's Unfair and Deceptive Acts and Practices Act (the "North Carolina UDTPA") broadly prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a).

1212. Defendant engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

1213. In purchasing their PFAS Carpet Products, the North Carolina Class members were deceived by Defendant's failure to disclose that its PFAS Carpet Products were treated with harmful PFAS chemicals.

210

1214. The North Carolina Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

1215. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

1216. Defendant knew or should have known that its conduct violated the North Carolina UDTPA.

1217. Defendant owed the North Carolina Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

   a. Possessed superior knowledge that its products were infused with PFASs applied to carpeting purchased by the North Carolina Class members; and

   b. Intentionally concealed the foregoing from the North Carolina Class members.

1218. Defendant's conduct proximately caused injuries to the North Carolina Class members.

1219. The North Carolina Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

1220. Defendant's violations present a continuing risk to the North Carolina Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

211

1221. The North Carolina Class members seek an order for treble their actual damages, costs, attorney's fees, and any other just and proper relief available under the North Carolina UDTPA. N.C. Gen. Stat. § 75-16.

<div align="center">

**COUNT 91**
**STRICT PRODUCTS LIABILITY (DESIGN DEFECT)**
**ON BEHALF OF THE NORTH DAKOTA CLASS MEMBERS**

</div>

1222. Plaintiffs incorporate herein the allegations contained above.

1223. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in North Dakota (the "North Dakota Class members").

1224. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1225. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the North Dakota Class members, who might be foreseeably harmed by PFAS Carpet Products.

1226. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a.  PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b.  PFAS contamination poses significant threats to public health, economic welfare, and the environment.

<div align="center">212</div>

1227. Defendant failed to disclose these threats to the North Dakota Class members and the public generally but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

1228. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the North Dakota Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1229. At all relevant times, the North Dakota Class members used their PFAS Carpet Products as intended.

1230. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to people and to property.

1231. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

213

1232. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

1233. As a direct and proximate result of Defendant's unreasonably dangerous design of the PFAS Carpet Products, the North Dakota Class members have been injured by widespread and toxic PFAS contamination.

1234. These and other acts by Defendant were a direct and proximate cause of damage to the North Dakota Class members.

<div align="center">

**COUNT 92**
**STRICT PRODUCTS LIABILITY (FAILURE TO WARN)**
**ON BEHALF OF THE NORTH DAKOTA CLASS MEMBERS**

</div>

1235. Plaintiffs incorporates by reference the allegations in the preceding paragraphs of this Complaint.

1236. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in North Dakota (the "North Dakota Class members").

1237. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the North Dakota Class members.

<div align="center">214</div>

1238. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the North Dakota Class members of those risks.

1239. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1240. Defendant's inadequate warnings and instructions rendered PFAS Carpet Products defective and not reasonably safe.

1241. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1242. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the North Dakota Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products.

1243. North Dakota Class members used their PFAS Carpet Products as intended.

1244. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to the North Dakota Class members, those products would not have gained widespread acceptance in the marketplace, and the North Dakota Class members would not have installed the PFAS Carpet Products at issue.

215

1245. These and other acts by Defendant were a direct and proximate cause of damage to the North Dakota Class members.

## COUNT 93
### NEGLIGENCE (DESIGN DEFECT)
### ON BEHALF OF THE OHIO CLASS MEMBERS

1246. Plaintiffs incorporate herein the allegations contained above.

1247. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Ohio (the "Ohio Class members").

1248. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1249. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the Ohio Class members, who might be foreseeably harmed by PFAS Carpet Products.

1250. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

216

1251. Defendant failed to disclose these threats to Ohio Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

1252. At all relevant times, PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Ohio Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1253. At all relevant times, the Ohio Class members used their PFAS Carpet Products as intended.

1254. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered their products defective, not reasonably safe, and unreasonably dangerous to people and to property.

1255. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

217

1256. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

1257. As a direct and proximate result of Defendant's unreasonably dangerous design of the PFAS Carpet Products, the Ohio Class members have been injured by widespread and toxic PFAS contamination.

1258. These and other acts by Defendant were a direct and proximate cause of damage to the Ohio Class members.

COUNT 94
NEGLIGENCE (FAILURE TO WARN)
ON BEHALF OF THE OHIO CLASS MEMBERS

1259. Plaintiffs incorporate herein the allegations contained above.

1260. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Ohio (the "Ohio Class members").

1261. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty under the common law of negligence to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew or should have known about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including Ohio Class members.

1262. Despite Defendant's superior knowledge of the safety risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Ohio Class members of those risks.

1263. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1264. Defendant's inadequate warnings and instructions rendered PFAS Carpet Products defective and not reasonably safe.

1265. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1266. Defendant's failure to warn proximately caused reasonably foreseeable injuries to Ohio Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products.

1267. At all relevant times, the Ohio Class members used their PFAS Carpet Products as intended.

1268. Had Defendant provided adequate warnings regarding the dangers of the PFAS Carpet Products to the Ohio Class members, those products would not have gained

widespread acceptance in the marketplace, and the Ohio Class members would not have installed the carpets at issue.

1269. These and other acts by Defendant were a direct and proximate cause of damage to the Ohio Class members.

<div align="center">

**COUNT 95**
**VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT**
**(OHIO REV. CODE ANN. §§ 1345.01 *ET SEQ.*)**
**ON BEHALF OF THE OHIO CLASS MEMBERS**

</div>

1270. Plaintiffs incorporate by reference the allegations in the preceding paragraphs of this Complaint.

1271. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Ohio (the "Ohio Class members").

1272. The Ohio Consumer Sales Practices Act ("Ohio CSPA") provides that "no supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier" is prohibited "whether it occurs before during, or after the transaction." The Ohio CSPA includes many examples of an unfair or deceptive act, notably "that the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not." Ohio Rev. Code Ann. § 1345.02.

1273. Defendant and the Ohio Class members are "persons" within the meaning of Ohio Rev. Code Ann. § 1345.01.

1274. Defendant is a "supplier" within the meaning of Ohio Rev. Code Ann. § 1345.01.

<div align="center">220</div>

1275. In purchasing their PFAS Carpet Products, the Ohio Class members were deceived by Defendant's failure to disclose that its PFAS Carpet Products were treated with harmful PFAS chemicals.

1276. The Ohio Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

1277. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

1278. Defendant knew or should have known that its conduct violated the Oklahoma CPA.

1279. Defendant owed the Ohio Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

    a.   Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Ohio Class members; and

    b.   Intentionally concealed the foregoing from the Ohio Class members.

1280. Defendant's conduct proximately caused injuries to the Ohio Class members.

1281. The Ohio Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

1282. Defendant's violations present a continuing risk to the Ohio Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

1283. Because Defendant's unfair and deceptive conduct caused injury to the Ohio Class members, they seek recovery of actual damages, reasonable attorneys' fees, and any other just and proper relief available under the Ohio CSPA.

<div align="center">

COUNT 96
STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
ON BEHALF OF THE OKLAHOMA CLASS MEMBERS

</div>

1284. Plaintiffs incorporate herein the allegations contained above.

1285. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Oklahoma (the "Oklahoma Class members").

1286. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1287. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the Oklahoma Class members, who might be foreseeably harmed by PFAS Carpet Products.

1288. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

<div align="center">222</div>

1289. Defendant failed to disclose these threats to the Oklahoma Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

1290. At all relevant times, PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Oklahoma Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1291. Oklahoma Class members used their PFAS Carpet Products as intended.

1292. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered their products defective, not reasonably safe, and unreasonably dangerous to persons and to property.

1293. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

1294. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

1295. As a direct and proximate result of Defendant's unreasonably dangerous design of the PFAS Carpet Products, the Oklahoma Class members have been injured by widespread and toxic PFAS contamination.

1296. These and other acts by Defendant were a direct and proximate cause of damage to the Oklahoma Class members.

COUNT 97
STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
ON BEHALF OF THE OKLAHOMA CLASS MEMBERS

1297. Plaintiffs incorporate herein the allegations contained above.

1298. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Oklahoma (the "Oklahoma Class members").

1299. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including Oklahoma Class members.

1300. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and Oklahoma Class members of those risks.

1301. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1302. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

1303. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1304. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Oklahoma Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products.

1305. At all relevant times, the Oklahoma Class members used their PFAS Carpet Products as intended.

1306. Had Defendant provided adequate warnings regarding the dangers of the PFAS Carpet Products to the Oklahoma Class members, those products would not have gained

225

widespread acceptance in the marketplace, and the Oklahoma Class members would not have installed the PFAS Carpet Products at issue.

1307. These and other acts by Defendant were a direct and proximate cause of damage to the Oklahoma Class members.

## COUNT 98
### VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT
### (OKLA. STAT. TIT. 15 §§ 751 *ET SEQ.*)
### ON BEHALF OF THE OKLAHOMA CLASS MEMBERS

1308. Plaintiffs incorporates by reference the allegations in the preceding paragraphs of this Complaint.

1309. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Oklahoma (the "Oklahoma Class members").

1310. The Oklahoma Consumer Protection Act ("Oklahoma CPA") provides that a "person engages in a practice which is declared to be unlawful under the Oklahoma Consumer Protection Act when, in the course of the person's business, the person … [c]ommits an unfair or deceptive trade practice as defined in Section 752 of this title." Okla. Stat. Tit. 15, § 753(21). Section 752(13) provides that a "deceptive trade practice" means "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person."

1311. Defendant and the Oklahoma Class members are "persons" within the meaning of Okla. Stat. Tit. 15, § 752.

1312. Defendant is a "person," "corporation," or "association" within the meaning of Okla. Stat. Tit. 15, § 15-751(1).

1313. In purchasing their PFAS Carpet Products, the Oklahoma Class members were deceived by Defendant's failure to disclose that its PFAS Carpet Products were treated with harmful PFAS chemicals.

1314. The Oklahoma Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

1315. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

1316. Defendant knew or should have known that its conduct violated the Oklahoma CPA.

1317. Defendant owed the Oklahoma Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

    a. Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by Oklahoma Class members; and

    b. Intentionally concealed the foregoing from the Oklahoma Class members.

1318. Defendant's conduct proximately caused injuries to the Oklahoma Class members.

1319. The Oklahoma Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

1320. Defendant's violations present a continuing risk to the Oklahoma Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

1321. Because Defendant's unconscionable conduct caused injury to the Oklahoma Class members, they seek recovery of actual damages, statutory penalties up to $2,000 per violation, and reasonable attorneys' fees, under Okla. Stat. Tit. 15, § 761.1. The Oklahoma Class members further seek any other just and proper relief available under the Oklahoma CPA.

## COUNT 99
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE OREGON CLASS MEMBERS

1322. Plaintiffs incorporate herein the allegations contained above.

1323. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Oregon (the "Oregon Class members").

1324. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1325. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and

it owed that duty to all people, including the Oregon Class members, who might be foreseeably harmed by PFAS Carpet Products.

1326. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

1327. Defendant failed to disclose these threats to the Oregon Class members and the public generally but instead downplayed and misrepresented the dangers posed by it PFAS Carpet Products.

1328. At all relevant times, PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Oregon Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1329. At all relevant times, the Oregon Class members used their PFAS Carpet Products as intended.

1330. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its

PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to people and to property.

1331. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

1332. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

1333. As a direct and proximate result of Defendant's unreasonably dangerous design of the PFAS Carpet Products, the Oregon Class members have been injured by widespread and toxic PFAS contamination.

1334. These and other acts by Defendant were a direct and proximate cause of damage to the Oregon Class members.

230

## COUNT 100
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
### ON BEHALF OF THE OREGON CLASS MEMBERS

1335. Plaintiffs incorporate herein the allegations contained above.

1336. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Oregon (the "Oregon Class members").

1337. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including Oregon Class members.

1338. Despite Defendant's superior knowledge of the risks posed by the PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Oregon Class members of those risks.

1339. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1340. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

231

1341. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1342. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Oregon Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products.

1343. At all relevant times, the Oregon Class members used their PFAS Carpet Products as intended.

1344. Had Defendant provided adequate warnings regarding the dangers of the PFAS Carpet Products to the Oregon Class members, those products would not have gained widespread acceptance in the marketplace, and the Oregon Class members would not have installed the PFAS Carpet Products at issue.

1345. These and other acts by Defendant were a direct and proximate cause of damage to the Oregon Class members.

**COUNT 101**
**VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT**
**(OR. REV. STAT. §§ 646.605 *ET SEQ.*)**
**ON BEHALF OF THE OREGON CLASS MEMBERS**

1346. Plaintiffs incorporate herein the allegations contained above.

1347. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Oregon (the "Oregon Class members").

1348. The Oregon Unfair Trade Practices Act ("Oregon UTPA") provides that a "person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following: … (u) Engages in any other unfair or deceptive conduct in trade or commerce." Or. Rev. Stat. § 646.608(1)(u).

1349. Defendant and the Oregon Class members are each a "person" within the meaning of Or. Rev. Stat. § 646.605(4).

1350. Defendant's PFAS Carpet Products are "goods" within the meaning of Or. Rev. Stat. § 646.605(6).

1351. In purchasing their PFAS Carpet Products, the Oregon Class members were deceived by Defendant's failure to disclose that its PFAS Carpet Products were treated with harmful PFAS chemicals.

1352. The Oregon Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

1353. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

1354. Defendant knew or should have known that its conduct violated the Oregon UTPA.

1355. Defendant owed the Oregon Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

233

a. Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Oregon Class members; and

b. Intentionally concealed the foregoing from the Oregon Class members.

1356. Defendant's conduct proximately caused injuries to the Oregon Class members.

1357. The Oregon Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

1358. Defendant's violations present a continuing risk to the Oregon Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

1359. The Oregon Class members are entitled to recover the greater of actual damages or $200 pursuant to Or. Rev. Stat. § 646.638(1), (8). The Oregon Class members are also entitled to punitive damages because Defendant engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

1360. The Oregon Class members seek attorneys' fees and any other just and proper relief available under Or. Rev. Stat. § 646.638(1), (8).

## COUNT 102
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE PENNSYLVANIA CLASS MEMBERS

1361. Plaintiffs incorporate herein the allegations contained above.

1362. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Pennsylvania (the "Pennsylvania Class members").

234

1363. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1364. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the Pennsylvania Class members, who might be foreseeably harmed by PFAS Carpet Products.

1365. PFAS Carpet Products are unreasonably dangerous for its foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

1366. Defendant failed to disclose these threats to the Pennsylvania Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

1367. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Pennsylvania Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1368. Pennsylvania Class members used their PFAS Carpet Products as intended.

235

1369. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered their products defective, not reasonably safe, and unreasonably dangerous to people and to property.

1370. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

1371. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

1372. As a direct and proximate result of Defendant's unreasonably dangerous design of the PFAS Carpet Products, the Pennsylvania Class members have been injured by widespread and toxic PFAS contamination.

1373. These and other acts by Defendant were a direct and proximate cause of damage to the Pennsylvania Class members.

## COUNT 103
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
### ON BEHALF OF THE PENNSYLVANIA CLASS MEMBERS

1374. Plaintiffs incorporate herein the allegations contained above.

1375. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Pennsylvania (the "Pennsylvania Class members").

1376. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including Pennsylvania Class members.

1377. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Pennsylvania Class members of those risks.

1378. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1379. Defendant's inadequate warnings and instructions rendered PFAS Carpet Products defective and not reasonably safe.

237

1380. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1381. Defendant's failure to warn proximately caused reasonably foreseeable injuries to Pennsylvania Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the Pennsylvania Class members used their PFAS Carpet Products as intended.

1382. Had Defendant provided adequate warnings regarding the dangers of the PFAS Carpet Products to the Pennsylvania Class members, those products would not have gained widespread acceptance in the marketplace, and the Pennsylvania Class members would not have installed the PFAS Carpet Products at issue.

1383. These and other acts by Defendant were a direct and proximate cause of damage to the Pennsylvania Class members.

COUNT 104
VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION LAW
(73 PA. CONS. STAT. §§ 201-1 *ET SEQ.*)
ON BEHALF OF THE PENNSYLVANIA CLASS MEMBERS

1384. Plaintiffs incorporate herein the allegations contained above.

1385. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Pennsylvania (the "Pennsylvania Class members").

1386. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania UTPCPL") prohibits unfair or deceptive acts or practices, including representing that goods or services have characteristics, benefits or qualities that they do not have; representing that goods or services are of a particular standard, quality or grade if they are of another; advertising goods or services with intent not to sell them as advertised; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding. 73 Pa. Cons. Stat. § 201-2(4).

1387. Defendant and the Pennsylvania Class members are "persons" within the meaning of 73 Pa. Cons. Stat. § 201-2(2).

1388. The Pennsylvania Class members purchased or leased PFAS Carpet Products primarily for personal, family, or household purposes within the meaning of 73 Pa. Cons. Stat. § 201-9.2.

1389.  All of the acts complained of herein were conducted by Defendant in the course of trade or commerce within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

1390. Defendant is liable to the Pennsylvania Class members for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 Pa. Cons. Stat. § 201-9.2(a).

239

## COUNT 105
## STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
## ON BEHALF OF THE RHODE ISLAND CLASS MEMBERS

1391. Plaintiffs incorporate herein the allegations contained above.

1392. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Rhode Island (the "Rhode Island Class members").

1393. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1394. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the Rhode Island Class members, who might be foreseeably harmed by PFAS Carpet Products.

1395. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

1396. Defendant failed to disclose these threats to the Rhode Island Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

240

1397. At all relevant times, PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Rhode Island Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1398. At all relevant times, the Rhode Island Class members used their PFAS Carpet Products as intended.

1399. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to people and to property.

1400. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

1401. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

1402. As a direct and proximate result of Defendant's unreasonably dangerous design of the PFAS Carpet Products, the Rhode Island Class members have been injured by widespread and toxic PFAS contamination.

1403. These and other acts by Defendant were a direct and proximate cause of damage to the Rhode Island Class members.

<div align="center">

**COUNT 106**
**STRICT PRODUCTS LIABILITY (FAILURE TO WARN)**
**ON BEHALF OF THE RHODE ISLAND CLASS MEMBERS**

</div>

1404. Plaintiffs incorporate herein the allegations contained above.

1405. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Rhode Island (the "Rhode Island Class members").

1406. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the Rhode Island Class members.

1407. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and Rhode Island Class members of those risks.

1408. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS

<div align="center">242</div>

Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1409. Defendant's inadequate warnings and instructions rendered PFAS Carpet Products defective and not reasonably safe.

1410. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1411. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Rhode Island Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products.

1412. At all relevant times, the Rhode Island Class members used their PFAS Carpet Products as intended.

1413. Had Defendant provided adequate warnings regarding the dangers of the PFAS Carpet Products to the Rhode Island Class members, those products would not have gained widespread acceptance in the marketplace, and the Rhode Island Class members would not have installed the PFAS Carpet Products at issue.

1414. These and other acts by Defendant were a direct and proximate cause of damage to the Rhode Island Class members.

243

## COUNT 107
### VIOLATION OF THE RHODE ISLAND DECEPTIVE TRADE PRACTICES ACT
### (R.I GEN. LAWS ANN. §§ 6-13.1-1 *ET SEQ.*)
### ON BEHALF OF THE RHODE ISLAND CLASS MEMBERS

1415. Plaintiffs incorporate herein the allegations contained above.

1416. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Rhode Island (the "Rhode Island Class members").

1417. The Rhode Island Deceptive Trade Practices Act ("Rhode Island DTPA") provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. Gen. Laws of R.I. Ann. § 6-13.1-2.

1418. In purchasing their PFAS Carpet Products, the Rhode Island Class members were deceived by Defendant's failure to disclose that its PFAS Carpet Products were treated with harmful PFAS chemicals.

1419. The Rhode Island Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

1420. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

1421. Defendant knew or should have known that its conduct violated the Rhode Island DTPA.

1422. Defendant owed the Rhode Island Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

a. Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by Rhode Island Class members; and

b. Intentionally concealed the foregoing from the Rhode Island Class members.

1423. Defendant's conduct proximately caused injuries to the Rhode Island Class members.

1424. The Rhode Island Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

1425. Defendant's violations present a continuing risk to the Rhode Island Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

1426. Because Defendant's unfair and deceptive conduct caused injury to the Rhode Island Class members, they seek recovery of up to three times the amount of actual damages, reasonable attorneys' fees, and any other just and proper relief available under the Rhode Island DTPA. Gen. Laws of R.I. Ann. § 6-13.1-5.2.

**COUNT 108**
**STRICT PRODUCTS LIABILITY (DESIGN DEFECT)**
**ON BEHALF OF THE SOUTH CAROLINA CLASS MEMBERS**

1427. Plaintiffs incorporate herein the allegations contained above.

1428. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in South Carolina (the "South Carolina Class members").

245

1429. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1430. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the South Carolina Class members, who might be foreseeably harmed by PFAS Carpet Products.

1431. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a.  PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b.  PFAS contamination poses significant threats to public health, economic welfare, and the environment.

1432. Defendant failed to disclose these threats to the South Carolina Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

1433. At all relevant times, PFAS Carpet Products were in a defective condition and unreasonably dangerous to the South Carolina Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1434. At all relevant times, the South Carolina Class members used their PFAS Carpet Products as intended.

1435. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered their products defective, not reasonably safe, and unreasonably dangerous to persons and to property.

1436. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

1437. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

1438. As a direct and proximate result of Defendant's unreasonably dangerous design of the PFAS Carpet Products, the South Carolina Class members have been injured by widespread and toxic PFAS contamination.

247

1439. These and other acts by Defendant were a direct and proximate cause of damage to the South Carolina Class members.

<div align="center">

**COUNT 109**
**STRICT PRODUCTS LIABILITY (FAILURE TO WARN)**
**ON BEHALF OF THE SOUTH CAROLINA CLASS MEMBERS**

</div>

1440. Plaintiffs incorporate herein the allegations contained above.

1441. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in South Carolina (the "South Carolina Class members").

1442. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its PFAS Carpet Products, including the South Carolina Class members.

1443. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the South Carolina Class members of those risks.

1444. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

<div align="center">248</div>

1445. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

1446. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1447. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the South Carolina Class members, who would have heeded legally adequate warnings about the dangers of the PFAS Carpet Products. At all relevant times, the South Carolina Class members used their PFAS Carpet Products as intended.

1448. Had Defendant provided adequate warnings regarding the dangers of the PFAS Carpet Products to the South Carolina Class members, those products would not have gained widespread acceptance in the marketplace, and the South Carolina Class members would not have installed the PFAS Carpet Products at issue.

1449. These and other acts by Defendant were a direct and proximate cause of damage to the South Carolina Class members.

## COUNT 110
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE SOUTH DAKOTA CLASS MEMBERS

1450. Plaintiffs incorporate herein the allegations contained above.

1451. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in South Dakota (the "Suth Dakota Class members").

1452. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1453. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the South Dakota Class members, who might be foreseeably harmed by PFAS Carpet Products.

1454. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

1455. Defendant failed to disclose these threats to the South Dakota Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

1456. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the South Dakota Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

250

1457. At all relevant times, the South Dakota Class members used their PFAS Carpet Products as intended.

1458. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered their products defective, not reasonably safe, and unreasonably dangerous to persons and to property.

1459. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

1460. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

1461. As a direct and proximate result of Defendant's unreasonably dangerous design of the PFAS Carpet Products, the South Dakota Class members have been injured by widespread and toxic PFAS contamination.

251

1462. These and other acts by Defendant were a direct and proximate cause of damage to the South Dakota Class members.

<div align="center">

**C**OUNT **111**
**S**TRICT **P**RODUCTS **L**IABILITY **(F**AILURE **T**O **W**ARN**)**
**O**N **B**EHALF **O**F **T**HE **S**OUTH **D**AKOTA **C**LASS **M**EMBERS

</div>

1463. Plaintiffs incorporate herein the allegations contained above.

1464. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in South Dakota (the "South Dakota Class members").

1465. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the South Dakota Class members.

1466. Despite Defendant's superior knowledge of the risks posed by the PFAS Carpet Products, Defendant failed to warn consumers, the public, and the South Dakota Class members of those risks.

1467. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS Carpet Products, and their widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1468. Defendant's inadequate warnings and instructions rendered PFAS Carpet Products defective and not reasonably safe.

1469. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1470. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the South Dakota Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the South Dakota Class members used their PFAS Carpet Products as intended.

1471. Had Defendant provided adequate warnings regarding the dangers of the PFAS Carpet Products to the South Dakota Class members, those products would not have gained widespread acceptance in the marketplace, and the South Dakota Class members would not have installed the PFAS Carpet Products at issue.

1472. These and other acts by Defendant were a direct and proximate cause of damage to the South Dakota Class members.

**VIOLATION OF THE SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND
CONSUMER PROTECTION LAW
(S.D. CODIFIED LAWS §§ 37-24-1 ET SEQ.)
ON BEHALF OF THE SOUTH DAKOTA CLASS MEMBERS**

1473. Plaintiffs incorporate herein the allegations contained above.

1474. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in South Dakota (the "South Dakota Class members").

1475. The South Dakota Deceptive Trade Practices and Consumer Protection Law ("South Dakota DTPCPL") provides that it is a "deceptive act or practice for any person to … (1) Knowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise or the solicitation of contributions for charitable purposes, regardless of whether any person has in fact been misled, deceived, or damaged thereby…." S.D. Codified Laws § 37-24-6.

1476. In purchasing their PFAS Carpet Products, the South Dakota Class members were deceived by Defendant's failure to disclose that its PFAS Carpet Products were treated with harmful PFAS chemicals.

1477. The South Dakota Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

1478. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

254

1479. Defendant knew or should have known that its conduct violated the South Dakota DTPCPL.

1480. Defendant owed the South Dakota Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

    a.  Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by South Dakota Class members; and

    b.  Intentionally concealed the foregoing from the South Dakota Class members.

1481. Defendant's conduct proximately caused injuries to the South Dakota Class members.

1482. The South Dakota Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

1483. Defendant's violations present a continuing risk to the South Dakota Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

1484. Under S.D. Codified Laws § 37-24-31, the South Dakota Class members are entitled to a recovery of their actual damages suffered as a result of Defendant's acts and practices.

## COUNT 113
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE TENNESSEE CLASS MEMBERS

1485. Plaintiffs incorporate herein the allegations contained above.

1486. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Tennessee (the "Tennessee Class members").

1487. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1488. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the Tennessee Class members, who might be foreseeably harmed by PFAS Carpet Products.

1489. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

1490. Defendant failed to disclose these threats to the Tennessee Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

256

1491. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Tennessee Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1492. At all relevant times, the Tennessee Class members used their PFAS Carpet Products as intended.

1493. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to people and to property.

1494. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

1495. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

257

1496. As a direct and proximate result of Defendant's unreasonably dangerous design of the PFAS Carper Products, the Tennessee Class members have been injured by widespread and toxic PFAS contamination.

1497. These and other acts by Defendant were a direct and proximate cause of damage to Plaintiffs and the Tennessee Class members.

## COUNT 114
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
### ON BEHALF OF THE TENNESSEE CLASS MEMBERS

1498. Plaintiffs incorporate herein the allegations contained above.

1499. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Tennessee (the "Tennessee Class members").

1500. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the Tennessee Class members.

1501. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Tennessee Class members of those risks.

1502. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS

258

Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1503. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

1504. Defendant's PFAS Carpet Products were defective by virtue of their inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1505. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Tennessee Class members, who would have heeded legally adequate warnings about the dangers of the PFAS Carpet Products.

1506. At all relevant times, the Tennessee Class members used their PFAS Carpet Products as intended.

1507. Had Defendant provided adequate warnings regarding the dangers of the PFAS Carpet Products to the Tennessee Class members, those products would not have gained widespread acceptance in the marketplace, and the Tennessee Class members would not have installed the PFAS Carpet Products at issue.

1508. These and other acts by Defendant were a direct and proximate cause of damage to Plaintiffs and the Tennessee Class members.

## COUNT 115
### VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT
### (TENN. CODE ANN. §§ 47-18-101 *ET SEQ*.)
### ON BEHALF OF THE TENNESSEE CLASS MEMBERS

1509. Plaintiffs incorporate herein the allegations contained above.

1510. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Tennessee (the "Tennessee Class members").

1511. The Tennessee Consumer Protection Act ("Tennessee CPA") provides that "unfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices." Tenn. Code Ann. § 47-18-109.

1512. Defendant committed the acts complained of herein in the course of "trade" and "commerce" within the meaning of Tenn. Code Ann. § 47-18-103.

1513. In purchasing their PFAS Carpet Products, the Tennessee Class members were deceived by Defendant's knowing failure to disclose that its PFAS Carpet Products were treated with harmful PFAS chemicals.

1514. The Tennessee Class members reasonably relied on Defendant's knowing omissions, and they did not and could not unravel Defendant's deception on their own.

1515. Defendant's knowing concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

1516. Defendant knew or should have known that its conduct violated the Tennessee CPA.

1517. Defendant owed the Tennessee Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

   a.  Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Tennessee Class members; and

   b.  Intentionally concealed the foregoing from the Tennessee Class members.

1518. Defendant's conduct proximately caused injuries to the Tennessee Class members.

1519. The Tennessee Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

1520. Defendant's violations present a continuing risk to the Tennessee Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

1521. As a direct and proximate result of Defendant's violations of the Tennessee CPA, the Tennessee Class members have suffered injury-in-fact and/or actual damages.

1522. Plaintiffs and the Tennessee Class members seek monetary relief against Defendant measured as actual damages in an amount to be determined at trial, treble damages for Defendant's knowing and willful violations of the Tennessee CPA, and any other just and proper relief available under the Tennessee CPA.

## COUNT 116
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE TEXAS CLASS MEMBERS

1523. Plaintiffs incorporate herein the allegations contained above.

1524. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Texas (the "Texas Class members").

1525. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1526. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the Texas Class members, who might be foreseeably harmed by PFAS Carpet Products.

1527. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

1528. Defendant failed to disclose these threats to the Texas Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

262

1529. At all relevant times, PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Texas Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1530. At all relevant times, the Texas Class members used their PFAS Carpet Products as intended.

1531. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to people and to property.

1532. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

1533. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

263

1534. As a direct and proximate result of Defendant's unreasonably dangerous design of the PFAS Carpet Products, the Texas Class members have been injured by widespread and toxic PFAS contamination.

1535. These and other acts by Defendant were a direct and proximate cause of damage to the Texas Class members.

## COUNT 117
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN) ON BEHALF OF THE TEXAS CLASS MEMBERS

1536. Plaintiffs incorporates by reference the allegations contained above.

1537. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Texas (the "Texas Class members").

1538. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including Texas Class members.

1539. Despite Defendant's superior knowledge of the risks posed by the PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Texas Class members of those risks.

1540. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS

264

Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1541. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

1542. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1543. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Texas Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products.

1544. At all relevant times, the Texas Class members used their PFAS Carpet Products as intended.

1545. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to the Texas Class members, those products would not have gained widespread acceptance in the marketplace, and the Texas Class members would not have installed the PFAS Carpet Products at issue.

1546. These and other acts by Defendant were a direct and proximate cause of damage to the Texas Class members.

**STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
ON BEHALF OF THE UTAH CLASS MEMBERS**

1547. Plaintiffs incorporate herein the allegations contained above.

1548. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Utah (the "Utah Class members").

1549. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1550. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous, and they owed that duty to all people, including the Utah Class members, who might be foreseeably harmed by PFAS Carpet Products.

1551. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

1552. Defendant failed to disclose these threats to the Utah Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

1553. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Utah Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1554. At all relevant times, the Utah Class members used their PFAS Carpet Products as intended.

1555. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered their products defective, not reasonably safe, and unreasonably dangerous to people and to property.

1556. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

1557. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1558. As a direct and proximate result of Defendant's unreasonably dangerous design of the PFAS Carpet Products, the Utah Class members have been injured by widespread and toxic PFAS contamination.

1559. These and other acts by Defendant were a direct and proximate cause of damage to the Utah Class members.

<div align="center">

**COUNT 119**
**STRICT PRODUCTS LIABILITY (FAILURE TO WARN)**
**ON BEHALF OF THE UTAH CLASS MEMBERS**

</div>

1560. Plaintiffs incorporate by reference the allegations in the preceding paragraphs of this Complaint.

1561. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Utah (the "Utah Class members").

1562. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including Utah Class members.

1563. Despite Defendant's superior knowledge of the risks posed by the PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Utah Class members of those risks.

<div align="center">

268

</div>

1564. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of the PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1565. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

1566. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1567. Defendant's failure to warn proximately caused reasonably foreseeable injuries to Utah Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products. At all relevant times, the Utah Class members used their PFAS Carpet Products as intended.

1568. Had Defendant provided adequate warnings regarding the dangers of the PFAS Carpet Products to the Utah Class members, those products would not have gained widespread acceptance in the marketplace, and the Utah Class members would not have installed the PFAs Carpet Products at issue.

1569. These and other acts by Defendant were a direct and proximate cause of damage to the Utah Class members.

## COUNT 120
### VIOLATION OF THE UTAH CONSUMER SALES PRACTICES ACT
### (UTAH CODE ANN. §§ 13-11-1 *ET SEQ.*)
### ON BEHALF OF THE UTAH CLASS MEMBERS

1570. Plaintiffs incorporate herein the allegations contained above.

1571. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Utah (the "Utah Class members").

1572. The Utah Consumer Sales Practices Act ("Utah CSPA") provides that a "deceptive act or practice by a supplier in connection with a consumer transaction violates this chapter whether it occurs before, during, or after the transaction," including indicating that "the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not." Further, the Utah CSPA provides that an "unconscionable act or practice by a supplier in connection with a consumer transaction violates this act whether it occurs before, during, or after the transaction." Utah Code Ann. § 13-11-21.

1573. Defendant is a supplier within the meaning of Utah Code Ann. § 13-11-3.

1574. Defendant committed the acts complained of herein in the course of a "consumer transaction" within the meaning of Utah Code Ann. § 13-11-3.

1575. In purchasing their PFAs Carpet Products, the Utah Class members were deceived by Defendant's failure to disclose that its PFAS Carpet Products were treated with PFAS Carpet Products.

270

1576. The Utah Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

1577. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

1578. Defendant knew or should have known that its conduct violated the Utah CSPA.

1579. Defendant owed the Utah Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

    a.  Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by the Utah Class members; and

    b.  Intentionally concealed the foregoing from the Utah Class members.

1580. Defendant's conduct proximately caused injuries to the Utah Class members.

1581. The Utah Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

1582. Defendant's violations present a continuing risk to the Utah Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

1583. Because of Defendant's unfair, deceptive, and unconscionable actions, Defendant are liable to the Utah Class members for actual damages, reasonable attorneys' fees, and costs, as well as any other remedies the Court may deem appropriate under Utah Code Ann. § 13-11-19.

## COUNT 121
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE VERMONT CLASS MEMBERS

1584. Plaintiffs incorporate herein the allegations contained above.

1585. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Vermont (the "Vermont Class members").

1586. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1587. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is not reasonably safe, and it owed that duty to all persons, including the Vermont Class members, who might be foreseeably harmed by PFAS Carpet Products.

1588. PFAS Carpet Products are not reasonably safe for their foreseeable uses and misuses because, among other things:

   a.  PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

   b.  PFAS contamination poses significant threats to public health, economic welfare, and the environment.

1589. Defendant failed to disclose these threats to the Vermont Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

272

1590. At all relevant times, PFAS Carpet Products were in a defective condition and not reasonably safe for the Vermont Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1591. Vermont Class members used their PFAS Carpet Products as intended.

1592. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered their products defective, not reasonably safe, and not reasonably safe for people and to property.

1593. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

1594. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

1595. As a direct and proximate result of Defendant's unreasonable and unsafe design of the PFAS Carpet Products, the Vermont Class members have been injured by widespread and toxic PFAS contamination.

1596. These and other acts by Defendant were a direct and proximate cause of damage to the Vermont Class members.

## COUNT 122
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
### ON BEHALF OF THE VERMONT CLASS MEMBERS

1597. Plaintiffs incorporate herein the allegations contained above.

1598. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Vermont (the "Vermont Class members").

1599. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the Vermont Class members.

1600. Despite Defendant's superior knowledge of the risks posed by the PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Vermont Class members of those risks.

1601. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS

Carpet Products, and their widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1602. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

1603. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1604. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Vermont Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products.

1605. At all relevant times, the Vermont Class members used their PFAS Carpet Products as intended.

1606. Had Defendant provided adequate warnings regarding the dangers of the PFAS Carpet Products to the Vermont Class members, those products would not have gained widespread acceptance in the marketplace, and the Vermont Class members would not have installed the PFAS Carpet Products at issue.

1607. These and other acts by Defendant were a direct and proximate cause of damage to the Vermont Class members.

275

## COUNT 123
### NEGLIGENCE (DESIGN DEFECT)
### ON BEHALF OF THE VIRGINIA CLASS MEMBERS

1608. Plaintiffs incorporate herein the allegations contained above.

1609. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Vermont (the "Vermont Class members").

1610. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1611. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to negligently place into the stream of commerce a product that is unreasonably dangerous, and it owed that duty to all persons, including the Virginia Class members, who might be foreseeably harmed by PFAS Carpet Products.

1612. PFAS Carpet Products are unreasonably dangerous for their foreseeable uses and misuses because, among other things:

   a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

   b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

1613. Defendant failed to disclose these threats to the Virginia Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

276

1614. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to the Virginia Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1615. At all relevant times, the Virginia Class members used their PFAS Carpet Products as intended.

1616. Defendant knew of these risks and nevertheless negligently failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered their products defective, not reasonably safe, and unreasonably dangerous to people and to property.

1617. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

1618. Defendant's PFAS Carpet Products were defectively and negligently designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

277

1619. As a direct and proximate result of Defendant's negligent design of unreasonably dangerous PFAS Carpet Products, the Virginia Class members have been injured by widespread and toxic PFAS contamination.

1620. These and other acts by Defendant were a direct and proximate cause of damage to the Virginia Class members.

## COUNT 124
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
### ON BEHALF OF THE VIRGINIA CLASS MEMBERS

1621. Plaintiffs incorporate herein the allegations contained above.

1622. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Virginia (the "Virginia Class members").

1623. As manufacturers and sellers PFAS Carpet Products, Defendant had a duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew or should have known about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including Virginia Class members.

1624. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Virginia Class members of those risks.

1625. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS

278

Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1626. Defendant's inadequate warnings and instructions rendered PFAS Carpet Products defective and not reasonably safe.

1627. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1628. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Virginia Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products.

1629. At all relevant times, the Virginia Class members used their PFAS Carpet Products as intended.

1630. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to the Virginia Class members, those products would not have gained widespread acceptance in the marketplace, and the Virginia Class members would not have installed the PFAS Carpet Products at issue.

1631. These and other acts by Defendant were a direct and proximate cause of damage to the Virginia Class members.

279

## COUNT 125
## STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
## ON BEHALF OF THE WASHINGTON CLASS MEMBERS

1632. Plaintiffs incorporate herein the allegations contained above.

1633. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Washington (the "Washington Class members").

1634. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1635. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is not reasonably safe, and it owed that duty to all persons, including the Washington Class members, who might be foreseeably harmed by PFAS Carpet Products.

1636. PFAS Carpet Products are not reasonably safe for their foreseeable uses and misuses because, among other things:

    a.  PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b.  PFAS contamination poses significant threats to public health, economic welfare, and the environment.

1637. Defendant failed to disclose these threats to the Washington Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

280

1638. At all relevant times, the PFAS Carpet Products were in a defective condition and not reasonably safe for the Washington Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1639. At all relevant times, the Washington Class members used their PFAS Carpet Products as intended.

1640. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered their products defective, not reasonably safe, and not reasonably safe for people and property.

1641. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

1642. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

281

1643. As a direct and proximate result of Defendant not reasonably safe design of the PFAS Carpet Products, the Washington Class members have been injured by widespread and toxic PFAS contamination.

1644. These and other acts by Defendant were a direct and proximate cause of damage to the Washington Class members.

**COUNT 126**
**STRICT PRODUCTS LIABILITY (FAILURE TO WARN)**
**ON BEHALF OF THE WASHINGTON CLASS MEMBERS**

1645. Plaintiffs incorporate herein the allegations contained above.

1646. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Washington (the "Washington Class members").

1647. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the Washington Class members.

1648. Despite Defendant's superior knowledge of the risks posed by PFAS Carpet Products, Defendant failed to warn consumers, the public, and the Washington Class members of those risks.

1649. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS

282

Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1650. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

1651. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1652. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Washington Class members, who would have heeded legally adequate warnings about the dangers of PFAS Carpet Products.

1653. At all relevant times, the Washington Class members used their PFAS Carpet Products as intended.

1654. Had Defendant provided adequate warnings regarding the dangers of PFAS Carpet Products to the Washington Class members, those products would not have gained widespread acceptance in the marketplace, and the Washington Class members would not have installed the PFAS Carpet Products at issue.

1655. These and other acts by Defendant were a direct and proximate cause of damage to the Washington Class members.

283

## COUNT 127

## VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
## (WASH. REV. CODE ANN. §§ 19.86.010 *ET SEQ.*)
## ON BEHALF OF THE WASHINGTON CLASS MEMBERS

1656. Plaintiffs incorporate herein the allegations contained above.

1657. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Washington (the "Washington Class members").

1658. The Washington Consumer Protection Act ("Washington CPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. § 19.96.010.

1659. Defendant committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of Wash. Rev. Code Ann. § 19.96.010.

1660. In purchasing their PFAS Carpet Products, the Washington Class members were deceived by Defendant's failure to disclose that its PFAS Carpet Products were treated with harmful PFAS chemicals.

1661. The Washington Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

1662. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

1663. Defendant knew or should have known that its conduct violated the Washington CPA.

284

1664. Defendant owed the Washington Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

a.  Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by Washington Class members; and

b.  Intentionally concealed the foregoing from the Washington Class members.

1665. Defendant's conduct proximately caused injuries to the Washington Class members.

1666. The Washington Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

1667. Defendant's violations present a continuing risk to the Washington Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

1668. Defendant is liable to the Washington Class members for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under Wash. Rev. Code Ann. § 19.86.090.

285

**STRICT PRODUCTS LIABILITY (DESIGN DEFECT)**
**ON BEHALF OF THE WEST VIRGINIA CLASS MEMBERS**

1669. Plaintiffs incorporate herein the allegations contained above.

1670. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in West Virginia (the "West Virginia Class members").

1671. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1672. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is not reasonably safe, and it owed that duty to all people, including the West Virginia Class members, who might be foreseeably harmed by PFAS Carpet Products.

1673. PFAS Carpet Products are not reasonably safe for their foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

1674. Defendant failed to disclose these threats to the West Virginia Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

286

1675. At all relevant times, the PFAS Carpet Products were in a defective condition and not reasonably safe for the West Virginia Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1676. At all relevant times, the West Virginia Class members used their PFAS Carpet Products as intended.

1677. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered their products defective, not reasonably safe, and not reasonably safe for people and property.

1678. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

1679. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

287

1680. As a direct and proximate result of Defendant's not reasonably safe design of the PFAS Carpet Products, the West Virginia Class members have been injured by widespread and toxic PFAS contamination.

1681. These and other acts by Defendant were a direct and proximate cause of damage to the West Virginia Class members.

<div align="center">

**COUNT 129**
**STRICT PRODUCTS LIABILITY (FAILURE TO WARN)**
**ON BEHALF OF THE WEST VIRGINIA CLASS MEMBERS**

</div>

1682. Plaintiffs incorporate herein the allegations contained above.

1683. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in West Virginia (the "West Virginia Class members").

1684. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the West Virginia Class members.

1685. Despite Defendant's superior knowledge of the risks posed by the PFAS Carpet Products, Defendant failed to warn consumers, the public, and the West Virginia Class members of those risks.

1686. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of PFAS

<div align="center">288</div>

Carpet Products, and their widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1687. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

1688. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1689. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the West Virginia Class members, who would have heeded legally adequate warnings about the dangers of the PFAS Carpet Products. At all relevant times, the West Virginia Class members used their PFAS Carpet Products as intended.

1690. Had Defendant provided adequate warnings regarding the dangers of the PFAS Carpet Products to the West Virginia Class members, those products would not have gained widespread acceptance in the marketplace, and the West Virginia Class members would not have installed the PFAS Carpet Products at issue.

1691. These and other acts by Defendant were a direct and proximate cause of damage to the West Virginia Class members.

289

## COUNT 130
### VIOLATION OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT
### (W. VA. CODE §§ 46A-6-101 *ET SEQ.*)
### ON BEHALF OF THE WEST VIRGINIA CLASS MEMBERS

1692. Plaintiffs incorporate herein the allegations contained above.

1693. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in West Virginia (the "West Virginia Class members").

1694. The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104. Without limitation, "unfair or deceptive" acts or practices include: "The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby…." W. Va. Code § 46A-6-102(7)(M).

1695. Defendant and the West Virginia Class members are each a "person" under W. Va. Code § 46A-1-102(31).

1696. The West Virginia Class members are "consumers" as defined by W. Va. Code §§ 46A-1-102(12) and 46A-6-102(2), who purchased the PFAS Carpet Products.

1697. Defendant committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of W. Va. Code § 46A-6-102(6).

290

1698. In the conduct of trade or commerce, Defendant knowingly concealed, suppressed, and omitted the material fact that carpets purchased by the West Virginia Class members were treated with PFAS Carpet Products, with the intent that others rely upon the concealment, suppression, or omission.

1699. In purchasing their carpets, the West Virginia Class members were deceived by Defendant's failure to disclose that its carpets were treated with PFAS Carpet Products.

1700. The West Virginia Class members reasonably relied on Defendant's omissions, and they did not and could not unravel Defendant's deception on their own.

1701. Defendant's concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

1702. Defendant knew or should have known that its conduct violated the West Virginia CCPA.

1703. Defendant owed the West Virginia Class members a duty to disclose the truth about PFAS Carpet Products because Defendant:

   a. Possessed superior knowledge that its products were infused with PFASs that were applied to carpeting purchased by West Virginia Class members; and

   b. Intentionally concealed the foregoing from the West Virginia Class members.

1704. Defendant's conduct proximately caused injuries to the West Virginia Class members.

1705. The West Virginia Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct. These injuries are the direct and natural consequence of Defendant's omissions.

1706. Defendant's violations present a continuing risk to the West Virginia Class members. Defendant's unlawful acts and practices complained of herein affect the public interest.

1707. Pursuant to W. Va. Code § 46A-6-106, the West Virginia Class members seek monetary relief against the Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $200 per violation of the West Virginia CCPA for each West Virginia Class member.

1708. The West Virginia Class members also seek punitive damages against the Defendant because they carried out despicable conduct with willful and conscious disregard of the rights of others, subjecting the West Virginia Class members to cruel and unjust hardship as a result.

1709. The West Virginia Class members further seek restitution, punitive damages, costs of Court, attorney's fees under W. Va. Code §§ 46A-5-101 *et seq.*, and any other just and proper relief available under the West Virginia CCPA.

292

## COUNT 131
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### ON BEHALF OF THE WISCONSIN CLASS MEMBERS

1710. Plaintiffs incorporate herein the allegations contained above.

1711. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Wisconsin (the "Wisconsin Class members").

1712. At all times relevant to this Complaint, Defendant was engaged in the business of manufacturing and selling PFAS Carpet Products.

1713. As a manufacturer and seller of PFAS Carpet Products, Defendant had a duty not to place into the stream of commerce a product that is unreasonably dangerous and not reasonably safe, and it owed that duty to all persons, including the Wisconsin Class members, who might be foreseeably harmed by PFAS Carpet Products.

1714. PFAS Carpet Products are unreasonably dangerous and not reasonably safe for their foreseeable uses and misuses because, among other things:

    a. PFASs cause extensive and persistent contamination of the environment even when used in their foreseeable and intended manner; and

    b. PFAS contamination poses significant threats to public health, economic welfare, and the environment.

1715. Defendant failed to disclose these threats to the Wisconsin Class members and the public generally, but instead downplayed and misrepresented the dangers posed by its PFAS Carpet Products.

293

1716. At all relevant times, the PFAS Carpet Products were in a defective condition and unreasonably dangerous to (and not reasonably safe for) the Wisconsin Class members, to an extent beyond that which would be expected or contemplated by an ordinary consumer when used in an ordinary and reasonably foreseeable manner.

1717. At all relevant times, the Wisconsin Class members used their PFAS Carpet Products as intended.

1718. Defendant knew of these risks and nevertheless failed to use reasonable care in the design of its PFAS Carpet Products. Defendant could have made products that did not contain the PFAS chemicals at issue in this Complaint or could have designed its PFAS Carpet Products in ways that substantially reduced or eliminated the health and environmental dangers posed by PFASs, the omission of which renders those products not reasonably safe. Defendant's failure to adopt those reasonable, feasible, safer, alternative designs rendered its products defective, not reasonably safe, and unreasonably dangerous to people and to property.

1719. At all relevant times, the foreseeable risk of harm to public health, property, and the environment posed by Defendant's PFAS Carpet Products outweighed the utility of using PFASs in those products and outweighed the cost to Defendant of reducing or eliminating such risk.

1720. Defendant's PFAS Carpet Products were defectively designed at the time they left Defendant's control, and those products reached their end users without substantial change in their condition.

1721. As a direct and proximate result of Defendant's unreasonably dangerous and not reasonably safe design of the PFAS Carpet Products, the Wisconsin Class members have been injured by widespread and toxic PFAS contamination.

1722. These and other acts by Defendant were a direct and proximate cause of damage to the Wisconsin Class members.

### COUNT 132
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
### ON BEHALF OF THE WISCONSIN CLASS MEMBERS

1723. Plaintiffs incorporate herein the allegations contained above.

1724. Plaintiffs bring this claim on behalf of Class members who installed their carpeting in Wisconsin (the "Wisconsin Class members").

1725. As a manufacturer and seller of PFAS Carpet Products, Defendant had a strict duty to adequately warn against latent dangers resulting from foreseeable uses and misuses of its products that Defendant knew about. Defendant's duty to warn extended to all third parties who might be foreseeably harmed by the ordinary use and misuse of its products, including the Wisconsin Class members.

1726. Despite Defendant's superior knowledge of the risks posed by the PFAS Carpet Products, Defendant failed to warn consumers, the public, and Wisconsin Class members of those risks.

1727. Any warnings that Defendant might have disseminated were rendered ineffective by its false and misleading public statements about the dangers of the PFAS Carpet Products, and its widespread and longstanding efforts to conceal and misrepresent the public health and environmental impacts of PFASs.

1728. Defendant's inadequate warnings and instructions rendered the PFAS Carpet Products defective and not reasonably safe.

1729. Defendant's PFAS Carpet Products were defective by virtue of its inadequate warnings at the time they left Defendant's control, and those PFAS Carpet Products reached their end users without substantial change in their condition.

1730. Defendant's failure to warn proximately caused reasonably foreseeable injuries to the Wisconsin Class members, who would have heeded legally adequate warnings about the dangers of the PFAS Carpet Products. At all relevant times, the Wisconsin Class members used their PFAS Carpet Products as intended.

1731. Had Defendant provided adequate warnings regarding the dangers of the PFAS Carpet Products to the Wisconsin Class members, those products would not have gained widespread acceptance in the marketplace, and the Wisconsin Class members would not have installed the PFAS Carpet Products at issue.

1732. These and other acts by Defendant were a direct and proximate cause of damage to the Wisconsin Class members.

## PRAYER FOR RELIEF

For these reasons, Plaintiffs prays for the following judgment:

A. An order certifying this action as a class action;

B. An order appointing Plaintiffs as Class Representative, and appointing undersigned counsel as Class Counsel to represent the Class;

C. A declaration that Defendant is liable under each and every one of the above enumerated causes of action;

D. An order awarding appropriate preliminary and/or final injunctive relief against the conduct of Defendant described above;

E. Payment to Plaintiffs and Class Members of all damages, exemplary or punitive damages, and/or restitution associated with the conduct for all causes of action in an amount to be proven at trial, including, but not limited to, the full amounts paid for the PFAS Carpet Products; and/or the costs to replace or return the PFAS Carpet Products;

F. An award of attorneys' fees, expert witness fees, and costs, as provided by applicable law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Class Members;

G. An award of statutory penalties to the extent available;

297

H. Interest as provided by law, including but not limited to pre-judgment and post judgment interest as provided by rule or statute; and

I. Such other and further relief as this Court may deem just, equitable, or proper.

Dated: December 6th 2024               Respectfully submitted,

*/s/ Adam G. Russell*
Adam G. Russell # 027505
FISHER | RUSSELL PLLC
10265 Kingston Pike, Suite C
Knoxville, Tennessee 37922
P: 865-259-7777
F: 865-322-9998
arussell@fisher-russell.com

Richard M. Paul III (*pro hac vice forthcoming*)
Laura C. Fellows (*pro hac vice forthcoming*)
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
P: 816-984-8100
F: 816-984-8101
Rick@PaulLLP.com
Laura@PaulLLP.com

*Counsel for Plaintiffs*

298